20 A.3d 1154 (2011)
420 N.J. Super. 256
Sharon Kelly O'BRIEN, Plaintiff-Appellant,
v.
TELCORDIA TECHNOLOGIES, INC., Defendant-Respondent.
No. A-4021-07T3
Superior Court of New Jersey, Appellate Division.
Argued March 1, 2011.
Decided June 13, 2011.
*1156 Christopher W. Hager argued the cause for appellant (Niedweske Barber, attorneys; Linda J. Niedweske, of counsel; Mr. Hager and Kevin E. Barber, on the brief).
Colleen M. Duffy, Newark, argued the cause for respondent (McElroy, Deutsch, Mulvaney & Carpenter, L.L.P., attorneys; Francis X. Dee, Morristown, of counsel; Mr. Dee and Ms. Duffy, on the brief).
Before Judges WEFING, PAYNE and BAXTER.
The opinion of the court was delivered by
PAYNE, J.A.D.
Plaintiff, Sharon Kelly O'Brien, has appealed from an order of summary judgment entered in favor of her employer, Telcordia Technologies, Inc., in an action instituted by plaintiff alleging age discrimination in employment in violation of the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -42 and discrimination against her based on her sex combined with her status as the mother of two young children. On appeal, she raises the following issues:
POINT I
PLAINTIFF O'BRIEN PRODUCED DIRECT EVIDENCE OF *1157 DISCRIMINATION AND, THEREFORE, THE MOTION JUDGE ERRED BY NOT ANALYZING THIS CASE UNDER A "MIXED-MOTIVES" PARADIGM.
POINT II
ALTERNATIVELY, UNDER THE MC DONNELL-DOUGLAS BURDEN-SHIFTING ANALYSIS, PLAINTIFF O'BRIEN HAS DEMONSTRATED SEVERAL GENUINE ISSUES OF MATERIAL FACT REGARDING PRETEXT AND, THEREFORE, SUMMARY JUDGMENT WAS ERRONEOUS.
A. To The Extent It Is Not Direct Evidence Of Age Discrimination, The "Going Forward" Policy Is Evidence Of Defendant Telcordia's Managerial Attitude.
B. The Trial Court Misunderstood And Misapplied The Undisputed Fact That Defendant Telcordia Violated Its Own Force Adjustment Policy In Connection With Plaintiff O'Brien's Termination.
C. Plaintiff O'Brien Was Clearly Better Qualified Than Agelopoulos And Thus She Created A Genuine Issue Of Fact Regarding Pretext.
D. Defendant Telcordia's False Explanation Of Plaintiff O'Brien's Replacement Was Evidence Of Its Discriminatory Purpose.
POINT III
AS A MATTER OF FIRST IMPRESSION, THE LAD PROVIDES A DISTINCT AFFIRMATIVE DEFENSE TO A CLAIM OF AGE DISCRIMINATION THAT DEFENDANT TELCORDIA DID NOT SATISFY.
A. The Disputed, Untimely and Incompetent Wanke Certification.
B. The Motion Record Did Not Support Telcordia's Affirmative Defense, Which is a Jury Issue.

I.
The record discloses that plaintiff was a long-term employee of Telcordia, occupying, since 1998, a position as a managing director in the company's Customer Service and Care Center (CSCC). In that capacity, she oversaw technical support to customers utilizing Telcordia's software systems, launched new products and managed her unit's yearly budget. Her supervisor was Executive Director Anita Amin.
As the result of an economic downturn in the telecommunications industry, commencing in 2001, Telcordia began a process of reducing its workforce from a peak of 8,000 employees to less than 2,600 in 2007. In 2002, Telcordia reduced its workforce by 787 employees, including plaintiff, who was laid off on October 30, 2002 at the age of fifty-one after employment by Telcordia and its predecessors of more than twenty-nine years.
In June 2002, the managing directors of the CSCC were reassigned to report either to a business unit denominated Strategic Business Management Systems (SBMS) or to a unit called Operation Support Systems (OSS). Managing directors Demetra Agelopoulos, Guidon Sorbo and Monica Brown were assigned to SBMS. Also, one of the products for which plaintiff had been responsible was transferred to Sorbo in SBMS. The remaining managing directors, including plaintiff, were reassigned to the OSS business. They continued to report, as previously, to Anita Amin in the CSCC.
In the Fall, a further reorganization occurred. At that time, Agelopoulos and the products for which she was responsible were returned to Amin's supervision in the CSCC. Amin was also made responsible for the supervision of an employee named Michael Allen. Additionally, the CSCC was merged into a unit called Software *1158 Systems, and it was determined that it would be led by five executive directors. Because eight CSCC directors had skills that qualified them for those five positions, lay-offs, or "force adjustments" as Telcordia termed it, were required. The eight director candidates for the five positions were plaintiff, Agelopoulos, Patrick Liang, James Galiardi, John Stallone, John Sullivan, Joseph Lamendella and Michael Allen. Additionally, the following four additional employees were considered: Stuart Lieberman, Joyce Coker, Jeffrey Campbell and John Szebo. Each was interviewed by Amin. She chose Galiardi, Agelopoulos, Stallone, Liang, and Allen. At the time, Galiardi was approximately fifty-seven years of age; Agelopoulos was twenty-nine. The ages of the other retained employees is not stated in the record. Six of the non-selected candidates, including plaintiff, were laid off.[1] In this suit, plaintiff's focus is on Agelopoulos, a Columbia University School of Engineering graduate with seven years of experience at Telcordia. After a proposed assignment to another director, Agelopoulos was made responsible for the products that had been handled previously by plaintiff.
Following her lay-off, on July 24, 2003, plaintiff filed suit, alleging both age discrimination and "sex-plus" discrimination, based on her status as a mother of two small children. Following extensive discovery, Telcordia successfully moved for summary judgment. A subsequent motion by plaintiff for reconsideration of the dismissal of her age discrimination claim was denied. Plaintiff has appealed only the judgment dismissing that claim.

II.
On appeal, plaintiff argues that summary judgment was improperly granted and that the motion judge overlooked direct evidence of discrimination and numerous genuine issues of fact regarding pretext. In reviewing her arguments, we apply the same standard that governed the trial court under Rule 4:46. Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46, 916 A.2d 440 (2007). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
To prevail at trial, plaintiff must present either circumstantial or direct evidence of age discrimination. A case based on circumstantial evidence is generally governed by the burden-shifting procedures established in a Title VII context in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677 (1973). See also Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97-98, 570 A.2d 903 (1990); Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 82-83, 389 A.2d 465 (1978) (adopting federal approach used in determining Title VII cases as a framework for analysis, when useful and fair, in discrimination claims brought under state law). First, plaintiff must present prima facie evidence of discrimination, consisting of evidence that she is a member of a protected class, she performed her job in a satisfactory manner *1159 and was discharged, and the employer retained a colleague who was outside the protected class. Baker v. Nat'l State Bank, 312 N.J.Super. 268, 284, 289, 711 A.2d 917 (App.Div.1998), aff'd in part and remanded in part, 161 N.J. 220, 736 A.2d 462 (1999). In this case, Telcordia has conceded that plaintiff has met her prima facie burden. Once that burden has been met, the burden of going forward shifts to Telcordia to present a legitimate non-discriminatory reason for the discharge. Id. at 284, 711 A.2d 917. If that occurs, the burden shifts back to plaintiff to demonstrate that her employer's reason was pretextual. Ibid. The burden of proof remains with plaintiff throughout.
Although disputed by plaintiff, we find as a matter of law in this case that Telcordia's demonstrated financial difficulties, arising from a downturn in the telecommunications market, provided a legitimate non-discriminatory reason for its massive force reductions, including plaintiff's lay-off. Young v. Hobart West Group, 385 N.J.Super. 448, 460, 897 A.2d 1063 (App.Div.2005). Our focus under a McDonnell Douglas analysis is therefore on the sufficiency of evidence of pretext offered by plaintiff.
In this matter, plaintiff relies as well on "mixed-motive" precedent, first articulated by the United States Supreme Court in a Title VII context in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In such a case, once plaintiff produces evidence that Telcordia placed substantial reliance on her age in making its lay-off determination in plaintiff's case, the burden of persuasion shifts to the company to prove that even if it had not considered the proscribed factor, the lay-off would have occurred. Id. at 244-45, 109 S.Ct. at 1787-88, 104 L.Ed.2d at 284. Initially, mixed-motive precedent was deemed applicable only when discrimination had been shown by "direct evidence that an illegitimate factor played a substantial role" in the employment decision. Id. at 275, 109 S.Ct. at 1803, 104 L.Ed.2d at 304 (O'Connor, J., concurring). However, in 1991, after the Court's decision in Price Waterhouse, Congress amended Title VII to read:
an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

[42 U.S.C.A. § 2000e-2(m) (emphasis supplied).]
In Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) the Court determined that, if in amending Title VII, Congress had intended to include a heightened standard of proof requiring direct evidence, it would have specified that standard, rather than simply focusing on whether discrimination was "a motivating factor" in an employer's decision. Id. at 99, 123 S.Ct. at 2154, 156 L.Ed.2d at 94.
We discussed Desert Palace in a case raising the issue of the applicability of a mixed-motive analysis in our decision in Myers v. AT & T, 380 N.J.Super. 443, 456-63, 882 A.2d 961 (App.Div.2005), certif. denied, 186 N.J. 244, 892 A.2d 1290 (2006), observing that, because the analytical framework of Price Waterhouse had been applied beyond its initial Title VII framework, logically, Desert Palace could be as well. Id. at 461, 882 A.2d 961.
Prior to the Supreme Court's decision in Desert Palace and our decision in Myers, the New Jersey Supreme Court had discussed a mixed-motive framework in cases such as Bergen Commercial Bank v. Sisler, 157 N.J. 188, 208-09, 723 A.2d 944 *1160 (1999), although declining to utilize that analysis in the circumstances of plaintiff's claim of age discrimination based on youth. Id. at 216-17, 723 A.2d 944. A mixed-motive analysis was also recognized in Fleming v. Correctional Healthcare Solutions, Inc., 164 N.J. 90, 100-01, 751 A.2d 1035 (2000), although the Court determined there that the plaintiff's claim was properly analyzed as a "pretext" case under McDonnell Douglas. Mixed motive also was raised in an age discrimination context in McDevitt v. Bill Good Builders, Inc., 175 N.J. 519, 816 A.2d 164 (2003), a case in which the plaintiff claimed that the company president's head nod in response to a discriminatory comment by another could constitute direct evidence of discrimination under Price Waterhouse. While the Court appeared willing to consider that approach, id. at 527-29, 816 A.2d 164, because it had not been raised at the trial level, the Court remanded the case for a determination whether evidence of the head nod constituted an adoptive admission and, if so, whether it satisfied the then-applicable Price Waterhouse standard of direct evidence. Id. at 531, 816 A.2d 164. The New Jersey Supreme Court has not considered the effect of Desert Palace on its mixed-motive jurisprudence.
We also note as significant to this appeal the United States Supreme Court's decision in Gross v. FBL Financial Services, Inc., ___ U.S. ___, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). In that case, the Court held that the burden-shifting framework of Price Waterhouse was inapplicable to claims under the federal Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C.A. § 621 to § 634. In doing so, the Court noted that Title VII had been amended to permit discrimination claims in which an improper consideration was "a motivating factor" for the adverse employment decision. ___ U.S. at ___, 129 S.Ct. at 2349, 174 L.Ed.2d at 127, whereas similar language was not contained in the ADEA. The Court stated:
This Court has never held that this burden-shifting framework applies to ADEA claims. And, we decline to do so now. When conducting statutory interpretation, we "must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." Fed. Express Corp. v. Holowecki, 552 U.S. 389, 393, 128 S.Ct. 1147, 1153, 170 L.Ed.2d 10, 17 (2008). Unlike Title VII, the ADEA's text does not provide that plaintiff may establish discrimination by showing that age was simply a motivating factor. Moreover, Congress neglected to add such a provision to the ADEA when it amended Title VII to add §§ 2000e-2(m) and 2000e-5(g)(2)(B), even though it contemporaneously amended the ADEA in several ways, see Civil Rights Act of 1991, § 115, 105 State. 1079; id. § 302, at 1088.
[Gross, supra, ___ U.S. at ___, 129 S.Ct. at 2349, 174 L.Ed.2d at 127.]
The Court noted that the ADEA provides that "[i]t shall be unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (emphasis supplied by Court). As such "but for" causation has to be established. ___ U.S. at ___, 129 S.Ct. at 2350-51, 174 L.Ed.2d at 128-29. Further, after questioning the continued validity of Price Waterhouse, the Court held "even if Price Waterhouse was doctrinally sound, the problems associated with its application have eliminated any perceivable benefit to extending its framework to ADEA claims." ___ U.S. at ___, 129 S.Ct. at 2351, 174 L.Ed.2d at 130. No New Jersey *1161 court has considered the effect of Gross on age discrimination claims brought under the NJLAD, which utilizes the same "because of" language employed in the ADEA.
With these principles and decisions in mind, we turn to the evidence that plaintiff claims supports her case.

A.
First, plaintiff relies on the certification of Stephen Sperman, who attested to first-hand knowledge of discriminatory practices used in connection with Telcordia's 2002 force reduction process. Sperman, who brought his own wrongful discharge action against Telcordia, which was dismissed following an arbitration hearing, stated that he was hired at age fifty-eight by Telcordia in 1999 as a director responsible for the company's network monitoring assurance and element communicator products, as well as its installation and deployment group and the CSCC department. His supervisor in 2002 was John Musumeci.
Sperman stated that, at a August or September 2002 staff meeting, Musumeci advised that force reductions would be implemented pursuant to a "going forward" policy that took an employee's age and pension eligibility into account. At the meeting, Musumeci reviewed an employee list and asked about the age and pension eligibility of the employees listed on it. Although Sperman objected to the policy in a conversation with Linda Apgar, a member of the company's human resources department, she advised that the policy as articulated by Musumeci would be followed.
Additionally, Sperman stated that he was directed by Musumeci to provide him with a list of employees who could be terminated, which he did. However, he refused to take subordinates' age and pension eligibility into consideration, despite Musumeci's instruction that he do so. Sperman also stated that he had interviewed for a job with Bill Zimlinghaus and, after doing so, was approached by Pinki Patel, "who was apparently working with Zimlinghaus," and asked what his age was and whether he was pension-eligible. Sperman refused to answer these questions.
Plaintiff contends that the statements by what she claims to be upper management set forth in Sperman's certification provide direct evidence of discrimination on the basis of age that is sufficient to shift the burden, pursuant to a mixed-motive analysis, to Telcordia to demonstrate that, even if age had not been considered a factor in its decision to terminate her employment, termination would nonetheless have occurred. However, the motion judge overlooked the evidence and did not engage in a mixed-motive analysis. In the alternative, plaintiff contends that the evidence should have been considered in connection with a McDonnell Douglas analysis.
Telcordia argues in response that the reasoning set forth in the United States Supreme Court's decision in Gross should be applied to age discrimination claims instituted pursuant to the NJLAD, and should be followed in "affirming the trial court's decision not to employ the Price Waterhouse analysis."
Telcordia argues additionally that plaintiff is barred by issue preclusion from arguing that Sperman's certification constitutes direct evidence of age discrimination, from claiming that the statements were made by Musumeci and Apgar, and from contending that Telcordia had a policy to discriminate against older workers. In this regard, Telcordia notes that, in dismissing Sperman's own claim of age discrimination, the arbitrator chose not to *1162 credit Sperman's evidence, stating that "[t]he evidence convinces me that ... Respondent had a non-pretextual legitimate, non-age related reason to retain Peterson over Claimant," and then continuing:
This conviction is not shaken by Claimant's allegations that Respondent had a policy of discriminating against older workers when it made layoff decisions. First, Musumeci, Gauntt, Chang, Patel, Peterson, and Zimlinghaus all refuted Claimant's assertion that Respondent targeted pension-eligible, and therefore older, staff for force reductions. In particular, given Patel's testimony, as corroborated by Gauntt and Chang, that she never inquired about Claimant's retirement status, and Zimlinghaus' testimony that he did not know Patel at the time the inquiry was supposedly made, I cannot credit Claimant's memory of his interaction with Patel.
I also do not share his interpretation of anything Musumeci may have said in earlier force reductions. As Respondent points out, a careful reading of Claimant's testimony on this point more strongly indicates that Musumeci asked directors during an earlier round of layoffs if they knew of anyone who might volunteer to take retirement. This is not the same as directing his subordinates to canvass for or encourage older volunteers and does not, in and of itself, establish a policy of discrimination against older workers.
Telcordia claims additionally that Sperman "effectively recanted" the statements in his certification, and in any case, those statements are inadmissible because neither Musumeci nor Apgar was involved in the selection of plaintiff for lay-off.
As an initial matter, we reject Telcordia's position that plaintiff is collaterally estopped by the arbitrator's dismissal of Sperman's case from utilizing the evidence produced by him in that proceeding in her own action. Among other requirements that must be fulfilled in order to invoke the doctrine, Telcordia must demonstrate that "the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." Matter of the Estate of Dawson, 136 N.J. 1, 20, 641 A.2d 1026 (1994).
The concept of privity, as well as its parameters, are necessarily imprecise: "Privity states no reason for including or excluding one from the estoppel of a judgment. It is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." Bruszewski v. United States, 181 F.2d 419, 423 (3rd Cir.) (Goodrich, J., concurring), cert. denied, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950). "A relationship is usually considered `close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." Collins v. E.I. DuPont de Nemours & Co., 34 F.3d 172, 176 (3rd Cir.1994) (applying New Jersey law); see also Moore v. Hafeeza, 212 N.J.Super. 399, 403-04, 515 A.2d 271 (Ch.Div.1986) ("Generally, one person is in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right. ...").
[Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338-39, 676 A.2d 1065 (1996).]
We do not find that the relationship between Sperman and plaintiff, which was premised only upon a commonality of interest in seeking recovery from Telcordia as the result of alleged age discrimination, to have been sufficiently close that privity could be found.
*1163 However, that conclusion does not end our analysis of the issues raised by plaintiff in connection with the Sperman certification. In our view, the principal consideration in connection with this appeal is whether the hearsay contained in the Sperman certification would be found admissible if a trial were held in plaintiff's case. If it would not, then any discongruence between Sperman's account and Telcordia's position on the method employed in its force reductions would be immaterial to plaintiff's position.
In this matter, as in McDevitt, supra, 175 N.J. at 530-31, 816 A.2d 164, the trial court did not directly address the admissibility of the content of Sperman's certification as evidence of corporate age discrimination in connection with plaintiff's claim. Moreover, we have not been provided with a copy of the testimony given at Sperman's arbitration proceeding, and we thus are unable to independently evaluate the weight and sufficiency of the evidence provided there as it relates to the present action. We note, however, that plaintiff was laid off effective October 30, 2002, as the result of decisions made by Amin, in consultation with human resources representative Patricia VanDuyne. Neither played a role in the lay-off of Sperman, who may not have been laid off at the same time as plaintiff or under similar criteria. Conversely, Musumeci, Apgar and Patel played no role in the lay-off of plaintiff, and indeed, Musumeci appears to have been laid off prior to plaintiff.
Further, we lack evidence that would permit us to determine that Musumeci, Apgar and Patel were employed at a level that would permit their alleged comments to be attributed to Telcordia, or that their comments were reflective of an approach that was employed in plaintiff's case. In the circumstances presented, we conclude that a remand is required for a determination of the admissibility of the statements set forth in the Sperman certification as an exception to the hearsay rule and pursuant to N.J.R.E. 401 and 403. At that time, the precedent cited by the parties in their briefs that relates to the evidentiary issue raised can be considered in light of a more complete evidentiary record than is available to us at present.
By adopting this alternative, we defer a decision on the thorny issue of the continued viability of the use of a Price Waterhouse mixed-motive analysis in light of the United States Supreme Court's decision in Gross in an age discrimination case instituted pursuant to the NJLAD. If the evidence offered by Sperman is found to be inadmissible, irrelevant or unduly prejudicial, the legal issue presented will have been mooted insofar as this case is concerned. If that evidence is found to be relevant, a further analysis of N.J.S.A. 10:5-12 in light of the ADEA and Gross will be required in order to determine whether this aspect of the case should proceed on the basis of Price Waterhouse or McDonnell Douglas.

B.
Plaintiff has additionally claimed that other evidence and factual issues that the motion judge failed to recognize precluded summary judgment.
[The following analysis, resulting in a rejection of plaintiff's arguments, has been omitted at the request of the court as it is wholly factual in nature.]

F.
As a consequence of the foregoing analysis, we find that the motion judge correctly ruled that plaintiff demonstrated no issue of material fact and no substantial evidence of pretext with respect to the issues *1164 that we have discussed in parts IIB through E of this opinion. In that regard, we conclude that judgment was properly granted dismissing plaintiff's claim as failing to rebut evidence that Telcordia had a legitimate business basis for dramatically reducing its work force and that it implemented that process, including the lay-off of plaintiff, in a legal manner. We remand for further consideration of the admissibility of the evidence presented by means of the Sperman certification.

III.
As a final argument, plaintiff contends "as a matter of first impression" that the NJLAD provides a distinct affirmative defense to a claim of age discrimination that Telcordia did not satisfy. In making this argument, plaintiff focuses on the emphasized portions of N.J.S.A. 10:5-12a, which states:
It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status [etc.] ... of any individual ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual
. . . .
It is plaintiff's position that this statutory provision requires Telcordia to establish, as an affirmative defense, that "lawful considerations other than age" motivated its force reduction decision in plaintiff's case. Plaintiff analogizes the underscored language to the ADEA's provision that "it shall not be unlawful for an employer" to take action otherwise prohibited by the ADEA when the action "is based on reasonable factors other than age." 29 U.S.C.A. § 623(f)(1). The United States Supreme Court has interpreted this language as creating an affirmative defense that a defendant employer must raise and prove. Meacham v. Knolls Atomic Power Lab., 554 U.S. 84, 92, 128 S.Ct. 2395, 2401, 171 L.Ed.2d 283, 291 (2008).
We disagree, accepting instead Telcordia's view that the emphasized language in the NJLAD qualifies the conditions under which forced retirements can occur. In support of that position, Telcordia notes that in 1998, the Legislature amended the NJLAD to prohibit forced retirements on the basis of age. When doing so, the Legislature amended N.J.S.A. 10:5-12(a) to add the emphasized language, in order to ensure that retirements could be mandated on the basis of other legitimate considerations. We agree with Telcordia's analysis, finding nothing in the legislative history of the amendment that would suggest an interpretation such as plaintiff suggests. As such, we reject those of plaintiff's arguments that are based on this theory.
In summary, we find that plaintiff's cause is hanging by the slender thread offered by the evidence contained in the Sperman certification. If that evidence is found, on remand, to be inadmissible, summary judgment will have been properly granted. Otherwise, plaintiff has set forth sufficient evidence to reach a jury, either under a Price Waterhouse or a McDonnell Douglas analysis. We defer consideration of the proper evidentiary framework.
Affirmed in part; remanded in part. Jurisdiction is not retained.
NOTES
[1] An Internal Selection Matrix prepared by Amin indicates that one candidate "declined" and six were not selected because they did not "possess sufficient functional/technical expertise relative to selected candidate(s)"; they did not "possess sufficient education or experience relative to selected candidate(s)"; or did not "possess sufficient approach to work behaviors relative to selected candidate(s)."