**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1894
_____

PAYAL MEHTA,
Appellant

v.

FAIRLEIGH DICKINSON UNIVERSITY; DR. ROBERT MCGRATH


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-00455)
District Judge: Honorable Susan D. Wigenton
_____

Argued March 6, 2013

Before:   RENDELL, AMBRO, and VANASKIE, *Circuit Judges.*

(Filed: July 15, 2013)

Benjamin D. Light, Esq. (Argued)
Aromando & Light, LLC
195 Fairfield Avenue, Suite 4D
West Caldwell, NJ 07006
        *Counsel for Appellant*

Gavin J. Rooney, Esq.
Monica Perrette, Esq.
Nicole Bearce Albano, Esq. (Argued)
Lowenstein Sandler, P.C.
65 Livingston Avenue
Roseland, NJ 07068
        *Counsel for Appellees*

_____

OPINION

_____

VANASKIE, Circuit Judge.

Plaintiff-Appellant Payal Mehta appeals the District Court's Order granting summary judgment in favor of Defendants-Appellees Fairleigh Dickinson University ("FDU") and Dr. Robert McGrath (collectively, "Defendants") on Ms. Mehta's discrimination, breach of contract, defamation, and negligence claims arising from Defendants' remedial response to Ms. Mehta's purportedly inadequate performance in FDU's doctoral clinical psychology program. For the following reasons, we will vacate the District Court's Order granting summary judgment for Defendants on the discrimination claim, and affirm the Order granting summary judgment for Defendants on the breach of contract, defamation, and negligence claims.

I.

Ms. Mehta enrolled in the Ph.D. program in clinical psychology at FDU in 2006. During her second year in the program, Ms. Mehta participated in a clinical component of the program, also known as a practicum. The practicum allows students to receive clinical experience under the supervision of faculty members who are licensed psychologists and who evaluate the students. Ms. Mehta's practicum took place at FDU's Center for Psychological Services ("Center"), where she participated in the Adult Learning Disability & Attention Deficit Hyperactivity Disorder Clinic ("Clinic").

2

Ms. Mehta's performance in the practicum was found to be deficient. Specifically, she was informed via email from Defendant Dr. McGrath, the director of the clinical training program, that the faculty had decided that her inadequate management of two cases warranted that she "complete another practicum focusing primarily on testing at the Center for Psychological Services." (App. 298.)[1] Dr. McGrath also wrote that the faculty "strongly recommended that you sit in on the practicum course again," and that "you consider the possibility of individual therapy to address what personal issues could have contributed to your problems . . . ." (*Id.*) Dr. McGrath subsequently emailed Ms. Mehta to inform her that the faculty adopted the proposed remedial conditions and explained that additional difficulties with meeting her clinical responsibilities could result in her termination from the program.

Ms. Mehta did not appeal her remediation plan, and instead resigned from the Ph.D. program and enrolled in FDU's Master's Degree program. She received a Master's Degree in May of 2010.

Claiming that the imposition of a remedial plan was the product of race and gender discrimination, that Dr. McGrath had defamed her, that FDU had failed to follow proper

---

[1] Among other things, the Clinic guidelines and procedures require that students contact their supervisor immediately after they are assigned a patient and complete their cases within eight weeks after their initial contact with the patient, unless they receive permission to deviate from that deadline. Ms. Mehta had not issued reports on psychological testing of two patients within the allotted eight-week timeframe. She claims that other doctoral candidates in her program did not submit reports on time, but were not required to repeat the practicum.

procedures in disciplining her, and that Defendants failed to supervise her clinical training, Ms. Mehta brought an action in state court under the New Jersey Law Against Discrimination, ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.*, Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and for defamation, breach of contract, and negligence. Ms. Mehta premised her discrimination claims on purportedly disparate treatment of other students and statements suggesting a discriminatory animus allegedly made by Dr. McGrath and Dr. Lana Tiersky, who served as director of the Clinic. Ms. Mehta claimed that Dr. McGrath had defamed her by reporting to others that she was a public safety threat. She further claimed that state law imposed a duty of care on FDU to supervise students in the doctoral program, and that FDU had failed to comply with the procedures for imposing disciplinary sanctions found in FDU's Code of Student Rights, Responsibilities and Conduct ("Student Code").

Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441, and moved for summary judgment upon completion of discovery. The District Court granted summary judgment on Ms. Metha's discrimination claims on the ground that Ms. Mehta failed to present sufficient evidence to establish a prima facie case under the burden-shifting framework of *McDonnell Douglas Corps. v. Green*, 411 U.S. 792 (1973), and that the statements of discriminatory animus attributed to Drs. McGrath and Tiersky were too remote in time and vague to support a claim under the mixed-motive framework articulated in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The District Court also concluded that the public threat statements attributed to Dr. McGrath did not support a

4

defamation action, and that Ms. Mehta's negligent supervision and breach of contract claims were baseless. Ms. Mehta's motion for reconsideration was denied, and this timely appeal followed.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "For an issue to be genuine, 'all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). We review a district court's decision to grant summary judgment de novo. *Id.*

A.     Discrimination

The NJLAD prohibits places of public accommodation from discriminating in the provision of accommodations and privileges because of, among other things, a person's race, national origin, nationality, or sex. N.J. Stat. Ann. § 10:5-4. Ms. Mehta contends that she has provided sufficient evidence to withstand summary judgment under both a mixed-motive and traditional pretext analysis.

5

1.      *Price Waterhouse* Framework

Ms. Mehta claims that Dr. McGrath disclosed a discriminatory state of mind when he allegedly said to her in December of 2007, eight months before the remediation plan was imposed, that "she would only ever be able to practice psychology in an Indian community." (App. 25.) Ms. Mehta further claims that Dr. Tiersky revealed a discriminatory mindset when she purportedly said to another faculty member that "I can't stand these passive Asian women." (*Id.* at 728.)

Asserting that Dr. Tiersky's alleged statement that she could not "stand . . . passive Asian women,"[2] and Dr. McGrath's alleged statement that Ms. Mehta would only be able to practice in an "Indian community" are both direct evidence of discrimination, Ms. Mehta argues that the mixed-motive framework of *Price Waterhouse* should shift the burden to Defendants to show that they would have imposed a remediation plan for Ms. Mehta even without considering an impermissible factor. We disagree.

The Supreme Court of New Jersey has adopted our approach, as articulated in *Fakete v. Aetna, Inc.*, 308 F.3d 335, 339 (3d Cir. 2002), to determine whether evidence of discrimination is "direct" in the sense that the burden should shift to the defendants under

---

[2] The District Court refused to consider the alleged statement by Dr. Tiersky because it found that it was "untimely" and was apparently a "new theor[y] of liability." (*See* App. 11 n.2.) We disagree with that characterization. Ms. Mehta's reference to Dr. Tiersky's statement was not an attempt to assert a new claim or theory of liability. Ms. Mehta brought a claim for race and sex discrimination, and Dr. Tierksy's statement regarding her feelings toward "passive Asian women" is relevant to such a claim. As a result, the District Court erred by failing to consider Dr. Tiersky's statement.

*Price Waterhouse*.  *See McDevitt v. Bill Good Builders, Inc.*, 816 A.2d 164, 169 (N.J. 2003).  The Supreme Court of New Jersey has characterized our holding in *Fakete* as requiring "a court [to] consider whether a statement made by a decisionmaker associated with the decisionmaking process actually bore on the employment decision at issue and communicated proscribed animus."  *Id.*

Here, Ms. Mehta has not demonstrated that Dr. Tiersky's statement about "passive Asian women," which she allegedly made to another faculty member while leaving a staff meeting, actually bore on the decision to impose Ms. Mehta's remediation plan.  Indeed, it is entirely unclear when Dr. Tiersky made that statement.  Likewise, Ms. Mehta has not shown any direct connection between Dr. McGrath's statement about her only being able to work in an Indian community—which he allegedly made eight months before the remediation plan was imposed—and the decision to implement the remediation plan.  Therefore, we conclude that these two statements do not constitute direct evidence of discrimination sufficient to shift the burden to Defendants under *Price Waterhouse*.[3]

---

[3] In *Gross v. FBL Financial Services*, 557 U.S. 167 (2009), the Supreme Court held that the *Price Waterhouse* mixed-motive burden shifting test did not apply to claims under the federal Age Discrimination in Employment Act.  *Id.* at 177-79.  The New Jersey state courts have recognized that the *Gross* decision has created a "thorny issue" as to whether the *Price Waterhouse* framework remains viable in age discrimination claims under the NJLAD, *see O'Brien v. Telcordia Techs., Inc.*, 20 A.3d 1154, 1163 (N.J. Super. Ct. App. Div. 2011).  This "thorny issue" may be just as relevant in race and sex discrimination claims under the NJLAD, as that statute encompasses the prohibition of age, race, and sex discrimination within the same provision.  *See* N.J. Stat. Ann. 10:5-4.

## 2. *McDonnell Douglas* Framework

Because we find the *Price Waterhouse* approach inapplicable here, Ms. Mehta may survive summary judgment on her discrimination claim if she can satisfy the test set forth in *McDonnell Douglas*. *See Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1139 (N.J. 2005) (recognizing the New Jersey courts' adoption of the *McDonnell Douglas* test for NJLAD claims). As the District Court explained, the appropriate adaptation of the *McDonnell Douglas* prima facie test for the circumstances in this case requires Ms. Mehta to show that she: (1) belongs to a protected class; (2) was objectively qualified to study in the program and met the program's legitimate expectations; (3) received an adverse action; and (4) was treated differently than other similarly situated students. *See Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 834 (N.J. 2002) ("The precise elements of a *prima facie* case must be tailored to the particular circumstances."). Defendants do not dispute that Ms. Mehta meets the first and third prongs, but contend that, as the District Court found, she fails to meet the second and fourth prongs.

The District Court concluded that Ms. Mehta failed to satisfy the second prong because it was undisputed that Ms. Mehta did not comply with program requirements concerning the timely completion of cases and keeping her supervisors informed of the status of her work with respect to two patients. Contrary to the District Court's

---

Because we conclude that the statements of Drs. Tiersky and McGrath do not constitute direct evidence of discrimination, however, we need not weigh in on the continued viability of the *Price Waterhouse* framework in the context of NJLAD claims.

8

conclusion, we do not find these facts dispositive of whether Ms. Mehta has shown that she was objectively qualified to study in the program and was meeting FDU's legitimate expectations for purposes of making out a prima facie case of discrimination. In the employment discrimination context, the Supreme Court of New Jersey has held that, to satisfy the second prong, "[a]ll that is necessary is that the plaintiff produce evidence showing that she was actually performing the [position] prior to the" adverse action. *Zive*, 867 A.2d at 1143. The court further explained that "even if a plaintiff candidly acknowledges, on his own case, that some performance issues have arisen, so long as he adduces evidence that he has, in fact, performed in the position up to the time of [the adverse action], the slight burden of the second prong is satisfied." *Id.* at 1144. Accordingly, while there may be some questions regarding Ms. Mehta's performance, we conclude that she has satisfied the second prong.

The District Court concluded that, while Ms. Mehta showed that other students in the program also did not complete their reports in the specified timeframe and were not subjected to a remediation plan, she nevertheless failed to satisfy the fourth prong because she did not present evidence of the comparators' race or sex. Ms. Mehta did, however, certify in her opposition to summary judgment that the three students she alleged had not been sanctioned for submitting late reports did not "belong[] to a racial minority group." (App. 753, ¶ 5.) Her certification that the three comparators were not members of a racial minority group, combined with patients' clinical records showing that those students also did not complete their cases within the eight-week-timeframe

9

specified in the Clinic's procedures, provide sufficient evidence to satisfy the fourth prong of the prima facie test.

Because we find that Ms. Mehta has established a prima facie case of discrimination, we will vacate the District Court's grant of summary judgment in favor of Defendants on that claim.[4]

### B. Breach of Contract

Ms. Mehta next argues that the District Court erred in granting summary judgment for Defendants on her breach of contract claim. New Jersey courts have "reject[ed] the rigid application of contractual principles to university-student conflicts involving academic performance and [have] limit[ed] [their] scope of review to a determination [of] whether the procedures followed [by the school] were in accordance with the institution's rules and regulations." *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 697 (N.J. Super. Ct. App. Div. 1998); *see also Napolitano v. Trs. of Princeton Univ.*, 453 A.2d 263, 270 (N.J. Super. Ct. App. Div. 1982). Therefore, we will limit our review to

---

[4] It is true, as Defendants argue and the District Court found, that Ms. Mehta did not provide evidence as to whether these three other students apprised their supervisors of their progress or otherwise received permission to exceed the eight week time line for the completion of their cases. We believe this fact is more relevant to whether Defendants can show a legitimate non-discriminatory reason for imposing the remediation plan than whether Ms. Mehta has established a prima facie case at the outset. Having found that the District Court erred in granting summary judgment on Ms. Mehta's discrimination claim based on its conclusion that she failed to make out a prima facie case, we need not address the subsequent steps in the *McDonnell Douglas* burden-shifting test, which the District Court did not reach. We express no opinion as to the merits of those issues.

whether Defendants complied with the FDU procedures that governed the imposition of a remediation plan for Ms. Mehta.

Ms. Mehta contends that the rules and procedures applicable to her allegedly deficient performance in her clinical work were those contained in the Student Code, which provides that "[e]xcept in unusual circumstances, no disciplinary sanctions may be imposed upon students without notice of the nature and cause of the charges; and only after the opportunity to have a hearing that may include witnesses and the assistance of a person of their choosing." (App. 609.) Defendants, however, contend that it is the Ph.D. Program Policies and Procedures ("Program Procedures") that are applicable. Those procedures provide that faculty will review students' progress in the program and may recommend the implementation of a remediation program if problems with a student's performance are identified.[5] Because Ms. Mehta's purported deficiencies arose in the context of her academic performance in her clinical work, and the Program Procedures provide the required steps in implementing a remediation plan, we agree with the District Court that those procedures apply to her claim, rather than the Student Code. As Ms. Mehta has not shown that Defendants failed to adhere to Program Procedures, we will

---

[5] Under the Program Procedures, upon the faculty's recommendation of a remediation plan, the relevant faculty members must identify in writing the particular problems to the student and allow the student an opportunity to consult with those faculty members. In addition, the procedures require the faculty members to present the student with the prescribed remediation plan at the time of consultation after which the Director of Clinical Training, the student's research advisor, and the student, if he or she agrees, will sign the remediation plan.

11

affirm the District Court's grant of summary judgment in favor of Defendants on Ms. Mehta's breach of contract claim.

## C.    Defamation

Ms. Mehta also claims that statements made by Dr. McGrath calling her a threat to public safety were defamatory.[6]  Under New Jersey law, "[a] statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him."  *Lynch v. N.J. Educ. Ass'n*, 735 A.2d 1129, 1135 (N.J. 1999).  "[O]pinion statements do not trigger liability unless they imply false underlying objective facts."  *Id.* at 1137 (citing Restatement (Second) of Torts § 566).  Whether a statement is one of fact or opinion is a question of law for the court to decide.  *Kotlikoff v. The Community News*, 444 A.2d 1086, 1090 (N.J. 1982).  As New Jersey courts have explained, a "pure" opinion, which is not actionable, "is one that is based on stated facts or facts that are known to the parties or assumed by them to exist." *Lynch*, 735 A.2d at 1137 (internal quotation marks omitted).  A pure opinion also exists "when the maker of the comment does not spell out the alleged facts on which the opinion is based but both parties to the communication know the facts or assume their existence and the statement of opinion is obviously based on those assumed facts as justification for the opinion."  *Kotlilkoff*, 444 A.2d at 1089.  On

---

[6] The District Court concluded that the statement included in the email to Ms. Mehta containing the proposed remediation plan, which recommend that Ms. Mehta consider individual therapy, was not defamatory.  On appeal, Ms. Mehta has not contested the District Court's finding as to that statement.

the other hand, a "mixed" opinion, which is actionable, "is one not based on facts that are stated or assumed by the parties to exist." *Lynch*, 735 A.2d at 1137.

Here, Dr. McGrath sent an email to the faculty in which he stated that, despite the imposition of the conditions in the remediation plan, he favored permitting Ms. Mehta to continue with her dissertation. He also noted that "completion of the [dissertation] research would not hinder our case for terminating her on grounds of protection of the public." (App. 304.) Based on the context, we conclude that Dr. McGrath was merely stating his opinion that allowing Ms. Mehta to continue her research would not necessarily preclude Defendants from terminating Ms. Mehta from the program—if she failed to meet the conditions of her remediation plan—based on Defendants' concerns for the safety of the public. The facts upon which Dr. McGrath based his opinion were well known to the faculty recipients of the email, given that they were aware of Ms. Mehta's purported deficiencies in her clinical work and were involved in the creation of the remediation plan. As a result, Dr. McGrath's statement in the email constituted "pure" opinion, and therefore is not susceptible to a defamation action.

In addition, we also believe that Dr. McGrath expressed a pure opinion when he allegedly told Dr. Cohen, the director of the externship program, that Ms. Mehta was a "threat to public safety." According to Dr. McGrath's deposition testimony, in explaining to Dr. Cohen why Defendants were withdrawing their support for Ms. Mehta's placement as an extern, he "raised [Defendants'] public safety obligation." (*Id.* at 232.) He elaborated that, in addition to the academic component, the psychology program

13

ultimately produces graduates who may become licensed psychologists and, as a result, Defendants have an obligation to take necessary steps if they believe a student created a risk to public safety. Dr. McGrath told Dr. Cohen that Ms. Mehta's performance "met the criteria for" creating such a risk. (*Id.*) He informed Dr. Cohen that Defendants were concerned that Ms. Mehta did not follow up with a patient in the Clinic and that she had not submitted her testing paperwork on time. Thus, in his communication to Dr. Cohen, Dr. McGrath stated the facts upon which he based his opinion regarding the public safety concern.[7] Therefore, his communication meets the requirements of a pure opinion and, accordingly, we will affirm the District Court's grant of summary judgment in favor of Defendants on Ms. Mehta's defamation claim.

### D. Negligence

Ms. Mehta's final claim on appeal is that Defendants breached their duty to supervise her testing of patients and were therefore negligent. Ms. Mehta's chief argument is that two New Jersey laws create a duty to supervise student psychologists.

Ms. Mehta first points to N.J. Stat. Ann. § 45:14B-6(c), which provides that psychology students are not limited in their activity if they are supervised and their training status is indicated. She relies on the principle that "the violation of a legislated

---

[7] We recognize that, in his deposition, Dr. McGrath initially testified that he had not formulated an opinion that Ms. Mehta was a threat to public safety. However, after further questioning regarding his communication with Dr. Cohen, Dr. McGrath explained the information he relayed to Dr. Cohen and clarified how that information formed the basis of his opinion that Ms. Mehta's performance required Defendants to cancel her externship.

14

standard of conduct may be regarded as evidence of negligence if the plaintiff was a member of the class for whose benefit the standard was established." *Alloway v. Bradlees, Inc.* 723 A.2d 960, 967 (N.J. 1999). The statutory scheme of which § 45:14B-6 is a part, among other things, prohibits unlicensed persons from representing themselves as licensed psychologists and creates a cause of action for patients harmed by the violation of the licensing provisions. *See* N.J. Stat. Ann. §§ 45:14B-5, 45:14B-42. We agree with the District Court that New Jersey enacted this scheme to benefit patients rather than psychology students.

The other law upon which Ms. Mehta bases her negligence claim is found in the New Jersey Administrative Code's exemption of graduate program psychology students from licensure requirements if they are under supervision. *See* N.J. Admin. Code § 13:42-1.4. The only obligations the regulation places on the supervisor are to ensure that:

> 1. The student's participation in the training program is a requirement of the graduate psychology program;
> 2. The student's transcript . . . reflects prior academic training specific to the duties assigned to the student; and
> 3. The student is clearly identified as a student intern or extern prior to engaging in psychological practice.

*Id.* The District Court correctly concluded that this provision creates no duty of care for supervisors vis-à-vis students. Therefore, we will affirm the District Court's grant of summary judgment in favor of Defendants on Ms. Mehta's negligence claim.

III.

15

For the foregoing reasons, we will vacate the Order of the District Court granting summary judgment in favor of Defendants on the discrimination claim, affirm the Order granting summary judgment in favor of Defendants on the remaining claims, and remand for further proceedings consistent with this opinion.