**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2183-17T3

IN THE MATTER OF THE
PETITION OF JERSEY CENTRAL
POWER & LIGHT COMPANY
PURSUANT TO N.J.S.A. 40:55D-19
FOR A DETERMINATION THAT
THE MONTVILLE-WHIPPANY 230
KV TRANSMISSION PROJECT IS
REASONABLY NECESSARY FOR
THE SERVICE, CONVENIENCE
OR WELFARE OF THE PUBLIC.

_____

Submitted October 3, 2019 – Decided November 1, 2019

Before Judges Nugent and DeAlmeida.

On appeal from the New Jersey Board of Public Utilities, Docket No. EO15030383.

Weiner Law Group LLP, attorneys for appellant Montville Township Board of Education (Stephen J. Edelstein, of counsel and on the brief; Aimee S. Weiner, on the brief).

Cozen O'Connor, PC, attorneys for respondent Jersey Central Power & Light Company (Gregory Eisenstark, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Board of Public Utilities (Jason W. Rockwell, Assistant Attorney General, of counsel; Andrew M. Kuntz, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Montville Township Board of Education (BOE) challenges the November 21, 2017 final order of respondent New Jersey Board of Public Utilities (BPU) granting the petition of respondent Jersey Central Power & Light Company (JCP&L) to construct a transmission line project not subject to the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163, or any other governmental ordinances or regulations, permits, or license requirements made under the authority of the MLUL.  We affirm.

I.

The following facts are derived from the record.  JCP&L is a public utility in the business of purchasing, distributing, transporting, and selling electricity to approximately 1.1 million customers in New Jersey.  It is subject to BPU's regulatory supervision and control.  See N.J.S.A. 48:2-13(a).

JCP&L filed a petition with the BPU pursuant to N.J.S.A. 40:55D-19 seeking approval to construct a seven-mile long 230 kV transmission line between its substations in East Hanover Township and Montville Township (the

Project).  The transmission line will be constructed in thirteen segments, mostly along existing transmission lines in JCP&L's existing right of way (ROW).  The Project also includes upgrades to the two substations.  The petition required BPU to determine whether the Project is reasonably necessary for the service, convenience, or welfare of the public and is, therefore, not subject to zoning and land use ordinances, or other government regulations enacted pursuant to the MLUL.

BPU transferred the petition to the Office of Administrative Law for a hearing.  BOE thereafter intervened.[1]  An Administrative Law Judge (ALJ) held a three-day evidentiary hearing at which JCP&L presented live and pre-filed testimony describing the need for the new transmission line.

The ALJ found that PJM Interconnection, LLC (PJM), a regional transmission organization, was approved by the Federal Energy Regulatory Commission to plan the region's electricity transmission grid.  PJM ensures transmission owners, including JCP&L, comply with North American Electric Reliability Corporation (NERC) reliability standards.

---

[1]  Montville Township also intervened, but resolved its objections to the Project through a stipulation with JCP&L altering the Project's route.

PJM's responsibilities include identifying violations of NERC's reliability criteria. There are three categories of conditions used to assess criteria violations: (1) Category A examines whether a system functions properly and can meet customer demand needs under normal operating conditions; (2) Category B examines system function when there is a loss of any single generating unit, transmission line, transformer, circuit breaker, capacitor, or single pole of a bi-polar transmission line; and (3) Category C examines system functionality when there are events resulting in the loss of any Category B element followed by the loss of a second element in the transmission system.

In 2012, PJM identified a Category C reliability violation in JCP&L's bulk electric system resulting from the hypothetical outage of the Montville-Roseland 230 kV line followed by the loss of either the Kittatinny-Newton 230 kV line or the Newton-Montville 230 kV line. This scenario would result in an interruption in service affecting approximately 86,719 JCP&L customers and violate PJM's planning criteria. A failure of this magnitude also could result in significant financial penalties for JCP&L. PJM determined the Project, if constructed, would address the criteria violation.

JCP&L presented testimony detailing its consideration of alternative routes and methods to address the criteria violation. The utility considered

A-2183-17T3

constructing a 115 kV transmission line, but rejected that option because its substations were not designed to support an additional 115 kV circuit, and an additional 115 kV line would not provide a satisfactory level of resilience. JCP&L also considered placing a 230 kV transmission line underground. The utility rejected this option because the underground transmission line would: (1) create several environmental issues related to wetlands and other sensitive areas; (2) multiply the costs of the Project by four to ten times; (3) increase the magnetic field exposure at ground level because the transmission line would be closer to the surface; and (4) increase repair time of the transmission line.

JCP&L also performed a routing study that considered three alternative routes. One of the alternatives had two alternate segments. The routing study concluded the proposed route was superior because it is the shortest, minimizes the overall effect of the Project on the natural and human environment, avoids unreasonable costs and special design requirements, and best complies with the BPU's requirement concerning the use of existing ROWs because eighty-nine percent of the route parallels or rebuilds existing transmission lines.

JCP&L presented two expert witnesses to discuss the effects of electric and magnetic fields (EMF), audible noise, and radio noise associated with the

Project.  The experts concluded the EMF exposure when the Project is operating would be well below State and international exposure limits.

At the hearing, BOE's President testified.  She was not qualified as an expert witness in any field.  She explained BOE takes issue with segment 10 of the Project, which calls for the construction of a transmission line adjacent to one of BOE's schools, the Robert R. Lazar Middle School.  The new transmission line would be carried on new 110-foot-tall monopoles constructed next to existing transmission lines in an existing JCP&L ROW abutting the property on which the school is located.  The new monopoles will be seventy feet from the edge of the ROW and approximately 175 feet closer to the school than the existing transmission lines.  Some of the trees that presently serve as a buffer between the school and the existing transmission line would be removed.

The BOE President expressed concern regarding the height of the new monopoles and their proximity to the school.  She stated that the BOE was concerned about the potential health effects on students and faculty arising from exposure to EMF and noise from the Project.  BOE offered no expert testimony to substantiate its concern or any evidence with respect to the EMF and noise it contends would be generated by the Project.  The BOE President also testified BOE has aesthetic concerns related to vegetation clearance near the school and

A-2183-17T3

the visual prominence of the new monopoles from school property. Finally, the BOE President testified BOE was concerned the Project would limit potential expansion of the school building due to the proximity of the new monopoles. BOE did not identify any present plans for expansion of the school and offered no expert testimony opining on potential building expansion limitations.

In rebuttal, JCP&L offered testimony from three witnesses with expertise in electric transmission facilities confirming the Project will meet all safety and design criteria, including with respect to EMF exposure and noise. In addition, the witnesses testified the proposed new monopoles will be shorter than existing structures. The witnesses also testified no building expansion would be allowed in JCP&L's existing ROW, whether or not the Project is constructed, and the Project would not affect construction outside the ROW.

The ALJ issued an initial decision concluding the Project is reasonably necessary for the service, convenience, or welfare of the public to enable JCP&L to provide safe, adequate, and reliable service. BOE filed exceptions.

On November 21, 2017, BPU issued a final order adopting the ALJ's initial decision in part[2], finding:

> (1)    That, in light of the NERC criteria violation and
> reliability concerns identified in this proceeding, there

---

[2] BPU modified the decision to account for the Montville/JCP&L stipulation.

is no reasonable, practical, and permanent alternative to the construction and operation of the Project that would have any less adverse impact upon the environment, surrounding community, or local land use ordinances;

(2)     That JCP&L conducted a good faith, reasonable, and extensive analysis of alternative methods for the Project, and the Project represents the most effective and efficient solution to the expected reliability criteria violations;

(3)     That the findings contained within this Order are the result of a thorough and complete review of the record in the proceeding.  The Board's findings are limited to the facts and circumstances of this particular Project along this particular route and shall not be construed as a determination by this Board on any other application[; and]

(4)     That the Project as proposed is to be designed and constructed in accordance with all applicable industry standards in a manner that will minimize impacts upon the environment, to the extent known or predictable[.]

In light of these findings, BPU determined JCP&L met its burden of proof under N.J.S.A. 40:55D-19 and ordered "that neither N.J.S.A. 40:55D-1, et seq., nor any other governmental ordinances or regulations, permits or license requirements made under the authority of N.J.S.A. 40:55D-1, et seq. shall apply to the siting, installation, construction, or operation of the Project . . . ."

This appeal followed.  BOE makes the following arguments for our consideration:

A-2183-17T3

POINT I

UNDER THE APPLICABLE STANDARD OF REVIEW, THE BPU'S DECISION MUST BE REVERSED.

POINT II

THE BPU ERRED WHEN IT DETERMINED THAT JCP&L DEMONSTRATED THAT THE PROJECT IS REASONABLY NECESSARY FOR THE SERVICE, CONVENIENCE, OR WELFARE OF THE PUBLIC.

POINT III

THE BPU'S DECISION IS INCONSISTENT WITH ITS PRIOR DIRECTIVE THAT REASONABLE EFFORTS SHOULD BE MADE TO INCREASE THE DISTANCE BETWEEN TRANSMISSION LINES AND THE LAZAR MIDDLE SCHOOL.

POINT IV

THE BPU ERRONEOUSLY CONCLUDED THAT JCP&L CONSIDERED ALTERNATIVE ROUTES AND METHODS, INCLUDING THOSE RAISED BY THE BOARD.

i. THE BOARD PROPOSED, AND JCP&L FAILED TO ADEQUATELY CONSIDER, A 115 KV LINE ALTERNATIVE AND ITS ADVANTAGES AS COMPARED TO THE PROPOSED PROJECT.

ii. JCP&L FAILED TO ADEQUATELY CONSIDER A PARTIALLY UNDERGROUND ALTERNATIVE AND ITS ADVANTAGES AS COMPARED TO THE PROPOSED PROJECT.

9

iii.	JCP&L	FAILED	TO	ADEQUATELY CONSIDER AN UNDER-BUILD ALTERNATIVE AT THE LAZAR MIDDLE SCHOOL PROPERTY AND ITS	ADVANTAGES	AS	COMPARED	TO	THE PROPOSED PROJECT.

II.

The scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). When making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (citing In re Carter, 191 N.J. 474, 482-83 (2007)).]

We are, however, "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

10

When reviewing BOE's arguments we remain mindful that "[t]he Legislature has endowed the BPU with broad power to regulate public utilities [and] considerable discretion in exercising those powers." In re Pub. Serv. Elec. & Gas Co.'s Rate Unbundling, 167 N.J. 377, 384-85 (2001) (quoting In re Elizabethtown Water Co., 107 N.J. 440, 449-50 (1987)). The Board's decisions are presumed to be valid "and will not be disturbed unless [the court] find[s] a lack of 'reasonable support in the evidence.'" Id. at 385 (quoting In re Jersey Cent. Power & Light Co. 85 N.J. 520, 527 (1981)).

BPU is authorized by statute to approve a public utility's proposed use of its property without the need to comply with ordinances or regulations enacted pursuant to the MLUL. According to N.J.S.A. 40:55D-19, where, after a hearing, BPU finds a public utility's proposed use of land

> is necessary for the service, convenience or welfare of the public . . . and that no alternative site or sites are reasonably available to achieve an equivalent public benefit, the public utility . . . may proceed in accordance with such decision of the [BPU], any ordinance or regulation made under the authority of [the MLUL] notwithstanding.

When making a determination under the statute, BPU must weigh the interests of all parties. Where the interests are equal, "the utility is entitled to the preference, because the legislative intent is clear that the broad public interest

11

to be served is greater than local considerations." In re Public Serv. Elec. & Gas Co., 35 N.J. 358, 377 (1961). A utility need not prove that a proposed project is "absolutely or indispensably[] necessary" but only that it is "reasonably necessary" for the service, convenience, or welfare of the public. Ibid.

After a careful review of the record in light of these precedents, we conclude there is substantial credible evidence supporting BPU's final order. BPU found credible the testimony of numerous witnesses, including experts, detailing the reliability criteria violation in JCP&L's present transmission system and how the Project will address that violation and enhance the utility's resilience. BOE raises no convincing argument that BPU's decision is lacking in evidentiary support or that the agency acted outside its statutory authority.

In addition, BPU considered detailed testimony explaining the alternate transmission routes and configurations considered by JCP&L before it determined the route and configurations for which JCP&L sought approval were the most ideally suited to solve the reliability criteria violation. The proposed route was the shortest of the alternatives, had the least environmental impact, and did not present the complications, environmental threats, and costs associated with putting a new transmission line underground, as proposed by

BOE.  The argument JCP&L did not consider alternatives to the Project is unsupported by the record.[3]

BPU also accepted expert testimony the Project, when operational, will emit EMF well below acceptable levels.  BOE presented only one witness, its President, who does not have expertise in electricity transmission lines or EMF.  She expressed BOE's concerns regarding the safety of the Project, but offered no expert testimony or other evidence supporting BOE's contention the Project will emit EMF dangerous to students and faculty or pose other harms.

BOE's President also expressed concerns about the visual environment at the Lazar school.  It was well within the BPU's authority to determine the BOE's aesthetic concerns were outweighed by the public need for the Project.  Finally, BOE's President speculated the Project may limit school expansion plans that might one day materialize.  BPU acted within its authority when it determined that concerns regarding potential expansion of the school were baseless because construction in the utility's ROW would be precluded whether or not the Project was constructed, and the record contains no evidence that expansion outside the ROW would be curtailed unreasonably.

---

[3]  Although BOE argues constructing an underground transmission line in the area of the middle school is a preferable alternative, it offered no testimony with respect to the feasibility, cost, or efficacy of such an alternative.

A-2183-17T3

We do not agree with BOE's argument BPU's final order must be vacated under res judicata or collateral estoppel. "The term '<u>res judicata</u>' refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." <u>Velasquez v. Franz</u>, 123 N.J. 498, 505 (1991) (emphasis in original). "The application of <u>res judicata</u> doctrine requires substantially similar or identical causes of action and issues, parties, and relief sought." <u>Culver v. Ins. Co. of North Am.</u>, 115 N.J. 451, 460 (1989) (emphasis in original). "In addition, there must be a 'final judgment by a court or tribunal of competent jurisdiction.'" <u>Ibid.</u> (quoting <u>Charlie Brown of Chatham v. Bd. of Adjustment</u>, 202 N.J. Super. 312, 327 (App. Div. 1985)).

"Collateral estoppel, in particular, represents the 'branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" <u>Tarus v. Borough of Pine Hill</u>, 189 N.J. 497, 520 (2007) (quoting <u>Sacharow v. Sacharow</u>, 177 N.J. 62, 76 (2003)). "A court has broad discretion to determine whether application of collateral estoppel is appropriate." <u>Adelman v. BSI Fin. Servs., Inc.</u>, 453 N.J. Super. 31, 39 (App. Div. 2018). In order

> [f]or the doctrine of collateral estoppel to apply to foreclose the relitigation of an issue, the party asserting

A-2183-17T3

the bar must show that: (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.

[Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Estate of Dawson, 136 N.J. 1, 20-21 (1994)).]

"A fundamental tenet of collateral estoppel is that the doctrine cannot be used against a party unless that party either participated in or was 'in privity with a party to the earlier proceeding.'" State v. K.P.S., 221 N.J. 266, 277 (2015) (quoting In re Estate of Dawson, 136 N.J. 1, 20 (1994)). "That tenet prohibits application of collateral estoppel if a party has not had a 'full and fair opportunity to litigate an issue.'" State v. McKinney, 223 N.J. 475, 493 (2015) (quoting K.P.S., 221 N.J. at 278)). "A relationship is usually considered 'close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." O'Brien v. Telcordia Techs., Inc., 420 N.J. Super. 256, 269 (App. Div. 2011) (quoting Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 338 (1996)).

BOE argues BPU's decision must be reversed because it is inconsistent with a 2010 BPU decision regarding a 145-mile-long 550 kV Public Service Electric & Gas (PSE&G) project which passed through Montville. A portion of the transmission line for that project ran adjacent to the Lazar school. BOE intervened in that matter, identifying three transmission towers it argued were too close to the school. BOE identified locations where those towers could be moved. BPU found that moving the towers would be "prudent and reasonable" and directed PSE&G to provide a report identifying a relocation or realignment of the towers unless it would be "highly impractical or not possible" to do so.

JCP&L was not a party to the PSE&G application. It did not participate in the 2010 proceeding. We reject BOE's argument that JCP&L is in privity with PSE&G because both are public utilities with parallel ROWs adjacent to the school. In addition, the utilities' two applications do not concern the same subject matter. The PSE&G project and the Project are distinct and were evaluated by BPU on the basis of their individual characteristics and locations.

To the extent we have not specifically addressed any of BOE's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2183-17T3