816 A.2d 164

BERNARD MCDEVITT, AN INDIVIDUAL, AND THOMAS GALANTE, AN INDIVIDUAL, PLAINTIFFS–APPELLANTS, AND HARRY PIERCE, AN INDIVIDUAL, AND HARRY BROWN, AN INDIVIDUAL, PLAINTIFFS, v. BILL GOOD BUILDERS, INC., A NEW JERSEY CORPORATION, DEFENDANT–RESPONDENT, AND JOHN DOES 1 THROUGH 10, INCLUSIVE, DEFENDANTS.

Argued December 2, 2002—Decided March 5, 2003.

*Joseph T. Threston, III,* argued the cause for appellants (*Zabel & Associates,* attorneys).

*Thomas H. Ehrhardt,* argued the cause for respondent.

The opinion of the Court was delivered by

LaVECCHIA, J.

Plaintiff Bernard McDevitt brought this action against defendant Bill Good Builders, Inc. ("employer" or "defendant"), under the Age Discrimination in Employment Act ("ADEA"), 29

*U.S.C.A.* § 623a(1), alleging that his termination of employment at age sixty-nine was motivated by his age rather than by a legitimate reduction in force as the employer asserted. The Appellate Division, in an unreported opinion, affirmed the trial court's grant of summary judgment dismissing the complaint, and we granted plaintiff's petition for certification, 172 *N.J.* 357, 798 *A.*2d 1270 (2002), to address the significant evidential issue raised. We agree with the lower courts that plaintiff failed to demonstrate a *prima facie* case of age discrimination under the four-pronged test of *McDonnell Douglas Corp. v. Green,* 411 *U.S.* 792, 802, 93 *S.Ct.* 1817, 1824, 36 *L.Ed.*2d 668, 677–78 (1973). The question, rather, is whether, as plaintiff contends, he presented such direct evidence of discriminatory purpose as would entitle him, under the principles of *Price Waterhouse v. Hopkins,* 490 *U.S.* 228, 276, 109 *S.Ct.* 1775, 1796–97, 104 *L.Ed.*2d 268, 304–05 (1989) (O'Connor, J., concurring), to a shift of the burden of persuasion thereby requiring the employer to prove it would have taken the adverse employment action even without consideration of the proscribed factor.

The asserted direct evidence was the head nodding by the employer's president, Bill Good ("Good"), who allegedly was present when his secretary, answering an inquiry by another employee as to why plaintiff was being terminated, said that he was "too old." Plaintiff contends that Good's nodding of his head in response to his secretary's statement constituted an adoptive admission by a party, admissible pursuant to *N.J.R.E.* 803(b)(2), of his discriminatory purpose in terminating the employment. The issues before us are whether a nod of the head may constitute an adoptive admission and, if so, whether that adoptive admission, if made, meets the *Price Waterhouse* direct-evidence test. Clearly, if both these questions are answered affirmatively, the summary judgment dismissing the complaint was improvidently granted. The difficulty is that neither question can be answered on this record. Both require circumstantial resolution in a hearing pursuant to *N.J.R.E.* 104. Accordingly, we reverse the summary judgment and remand for the necessary hearing.

## I.

The relevant facts are presented in the light most favorable to plaintiff. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995). Plaintiff had been a painter at the Philadelphia Naval Yard for thirty years when he retired in 1990 at age sixty-two. A year or two later, he began working as a painter again for defendant employer whose company specialized in home restoration projects funded by insurance claim proceeds. Plaintiff was terminated effective October 31, 1997. The reason given was a need to reduce the company's workforce. At about the time of plaintiff's termination, the company was experiencing a decline in larger restoration jobs and had begun subcontracting its painting work to spray–painting companies. Plaintiff concedes that he did not have spray-painting experience; his specialty was hand painting. Prior to plaintiff's termination, the employer had hired a younger painter, Martin Heimbach, who died of cancer within a few weeks after plaintiff's termination. No other worker with the job description of "painter" had been hired prior to plaintiff's termination and none was hired to replace either plaintiff or Heimbach. Around the same time, the employer also reduced the number of its foremen from two to one and the number of its carpenters from seven to three. According to plaintiff, the one remaining foreman paints as well as supervises at job sites. Plaintiff bases his *McDonnell Douglas* claim of pretextual firing on the retention of that one foreman who, plaintiff contends, is primarily a painter. Plaintiff asserts that the foreman's "other" supervisory duties entail nothing more than those that he himself had performed at job sites.

Plaintiff's suspicions concerning the true reason for his termination resulted from a conversation he had with another former employee, Wendy Haddock, a few weeks after he was terminated. Plaintiff received a telephone call from Haddock, a former office assistant and receptionist for the company, who coincidentally had quit on plaintiff's last day of employment, October 31, 1997. She informed plaintiff that he had been fired because Good thought

that he was too old for the job. According to Haddock, on October 30, 1997, while Nancy Cockrell, Good's secretary, was typing plaintiff's termination letter, Haddock asked her why plaintiff was being fired. Cockrell responded by saying that it was because plaintiff was "too old." Haddock said that Good was present at the time and she observed him nodding his head in agreement when she and Cockrell had this exchange although he did not say anything. Cockrell, on the other hand, does not recall the conversation taking place or even typing the letter. Good does not recall the conversation either. According to plaintiff, however, Good made a similar comment to him on at least one earlier occasion, remarking to plaintiff that he was "getting too old for this type of work." Good denies that statement also. He consistently has maintained that the company's shortage of work motivated the reduction in force that included plaintiff's termination. Nonetheless, in an effort to resolve this matter the company extended an offer of reemployment to plaintiff eighteen months after he had been terminated. Plaintiff declined the offer.

The parties filed cross-motions for summary judgment. Plaintiff asserted that he met the four-prong *McDonnell Douglas* test required for a *prima facie* age discrimination cause of action in that he (1) was over age 40, (2) was qualified for the job as a painter, (3) was laid off by the company, and (4) Robert Shaw, the remaining foreman, was an "unprotected worker" retained by the company. See *McDonnell Douglas, supra,* 411 *U.S.* at 802, 93 *S.Ct.* at 1824, 36 *L.Ed.*2d at 677–78. Plaintiff also asserted that he had direct evidence of a discriminatory termination, namely, Good's statement about plaintiff getting too old for the job and his head nod in apparent agreement with Cockrell's statement that plaintiff was being terminated because of his age. Accordingly, he claimed that under *Price Waterhouse,* he was entitled to have his case presented to a jury with the burden of persuasion shifted to defendant to prove that plaintiff would have been terminated notwithstanding the impermissible consideration of his age.

Defendant disputed plaintiff's asserted *prima facie* case under *McDonnell Douglas* because no unprotected worker was retained by the company and all "painters" were terminated, except for Heimbach, who died within weeks after plaintiff's termination and was not replaced. Moreover, it contended that Shaw was a foreman and not a painter and hence he was not an unprotected worker of the same class as plaintiff. Finally, defendant disputed that plaintiff was entitled to a shift of the burden of persuasion under *Price Waterhouse,* asserting that Good's head nod did not meet the required standard for "directness" of proof. Defendant, moreover, discounted Good's alleged earlier comment as a mere stray remark.

The trial court granted summary judgment to defendant, determining from the record that a reasonable factfinder would find that plaintiff legitimately was terminated due to a reduction in force. The Appellate Division affirmed on the basis of plaintiff's failure to make a *prima facie* showing of the fourth prong of *McDonnell Douglas.* In respect of whether plaintiff had presented direct evidence of discrimination under *Price Waterhouse,* the court considered the alleged nodding of the head to have been "equivocal" and, moreover, that it was "highly questionable" whether the head nod would constitute an adoptive admission.

Plaintiff's petition for certification raises two issues: (1) whether he successfully presented a *prima facie* case of age discrimination under *McDonnell Douglas,* and (2) whether the trial court should have considered *Price Waterhouse,* addressing the head nod as an adoptive admission, which, plaintiff contends, would constitute direct evidence of discrimination by the company. As noted, we agree with the lower courts that plaintiff failed to establish that the company retained a sufficiently younger worker in the same position as plaintiff and, therefore, he failed to meet the fourth prong of the *McDonnell Douglas* test. Accordingly, we turn to the more substantial issue of the head nod and its bearing on the *Price Waterhouse* direct-evidence standard.

## II.

■ Under *Price Waterhouse*, when a plaintiff produces evidence that an employer placed substantial reliance on a proscribed discriminatory factor in making its decision to take the adverse employment action, the burden of persuasion shifts to the employer to prove that even if it had not considered the proscribed factor, the employment action would have occurred. *Price Waterhouse, supra,* 490 *U.S.* at 244–45, 109 *S.Ct.* at 1787–88, 104 *L.Ed.*2d at 284. In the typical employment discrimination case, an employee strives to adduce "direct evidence" of the perceived discriminatory animus that allegedly motivated the employer's adverse employment action in order to gain the considerable benefit of that shift of the burden of proof to the employer. See *Febres v. Challenger Caribbean Corp.,* 214 *F.*3d 57, 60 (1st Cir.2000) (observing in respect of direct evidence that "in the average case, the employee thirsts for access to it, while the employer regards it as anathema"). But to qualify for that benefit, as Justice O'Connor explained in her concurring opinion in *Price Waterhouse, supra,* 490 *U.S.* at 276, 109 *S.Ct.* at 1796–97, 104 *L.Ed.*2d at 304–05, the discriminatory purpose must be demonstrated by direct evidence. Although that requirement is now embedded in the discrimination jurisprudence, there is substantial disagreement as to what it means. Thus "while courts agree on what is *not* direct evidence—e.g., statements by non-decisionmakers, statements by decisionmakers unrelated to the contested employment decision, and other 'stray remarks'—there is no consensus on what is." *Fakete v. Aetna, Inc.,* 308 *F.*3d 335, 338 n. 2 (3d Cir.2002).

In determining whether an adoptive admission by way of a head nod can meet the direct-evidence test, we consider first the disparate approaches to direct evidence taken by the federal courts. *See generally* Benjamin C. Mizer, Note, *Toward a Motivating Factor Test for Individual Disparate Treatment Claims,* 100 *Mich. L. Rev.* 234, 239 (2001) (noting that "[t]he circuit courts currently fall into three general schools of thought with respect to the meaning of 'direct evidence' "). Illustratively, the Second

Circuit Court of Appeals has allowed a case to proceed on the basis of direct evidence where a supervisor merely expressed surprise at the plaintiff's desire to work until age seventy. *Lightfoot v. Union Carbide Corp.*, 110 *F*.3d 898, 913 (2d Cir.1997). The Tenth Circuit Court of Appeals, on the other hand, has dismissed as insufficiently "direct," and overly ambiguous, statements by a supervisor to the effect that the person she had just fired was an "incompetent n____r." *Shorter v. ICG Holdings, Inc.*, 188 *F*.3d 1204, 1207 (10th Cir.1999). Another approach, adopted by the Fourth Circuit, considers the overall strength of the evidence under the totality of the circumstances rather than focusing exclusively on the "directness" of the proffered evidence itself. *Taylor v. Virginia Union Univ.*, 193 *F*.3d 219, 232 (4th Cir.1999) (en banc), *cert. denied*, 528 *U.S.* 1189, 120 *S.Ct.* 1243, 146 *L.Ed.*2d 101 (2000). Under that approach, applied by the Third Circuit Court of Appeals in *Fakete, supra*, 308 *F*.3d at 339, a court must consider whether a statement made by a decisionmaker associated with the decisionmaking process actually bore on the employment decision at issue and communicated proscribed animus.

We favor the *Fakete* approach. And, indeed, we have recognized that the qualitative nature of the proofs must determine whether a plaintiff has direct evidence of discrimination. Thus, in *Bergen Commercial Bank v. Sisler*, 157 *N.J.* 188, 208, 723 *A.*2d 944 (1999), we emphasized the importance of the quality of proofs, which "must, if true, demonstrate not only a hostility toward members of the employee's class, but also a direct causal connection between that hostility and the challenged employment decision." Although in *Sisler* we quoted *Castle v. Sangamo Weston, Inc.*, 837 *F*.2d 1550, 1558 n. 13 (11th Cir.1988), for the proposition that to survive summary judgment the evidence must provide proof of a fact "without inference or presumption," we have nevertheless also recognized that proofs of sufficient quality could be provided through "circumstantial evidence 'of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Fleming v. Corr. Healthcare Solutions, Inc.*, 164 *N.J.* 90,

101, 751 *A*.2d 1035 (2000) (citation omitted). We apply that standard here. In doing so, we are required initially to determine whether Good's head nod is admissible as an adoptive admission and, if so, whether in the circumstances it meets the direct-evidence test as we have defined it.

## III.

On the issue of admissibility, *N.J.R.E.* 803(b) provides an exception to the hearsay rule for an out-of-court admission by a party to litigation. As has been explained, "a party can hardly object that he had no opportunity to cross-examine himself or that he is unworthy of credence save when speaking under sanction of oath." 2 *McCormick on Evidence* § 254 (Strong ed.1992) (quoting Morgan, *Basic Problems of Evidence*, 265–66 (1963)). Included within this exception is the doctrine of "adoptive admissions" that categorizes as party admissions statements made by third parties that are "adopted" by the party. Under *N.J.R.E.* 803(b)(2), statements "whose contents the party has adopted by word or conduct or in whose truth the party has manifested belief" are admissible. The rule follows the "stricture" and the "substantive content" of its federal counterpart, *Fed.R.Evid.* 801(d)(2). Biunno, *Current N.J. Rules of Evidence*, committee comment on *N.J.R.E.* 803(b) (2002) ("Biunno"). The "exception is applicable in both civil and criminal cases," Biunno, comment 2 on *N.J.R.E.* 803(b) (2002), but it is applied "with caution" to avoid "prejudice and injustice." *Greenberg v. Stanley*, 30 *N.J.* 485, 498, 153 *A*.2d 833 (1959).

A hearsay statement qualifies as an adoptive admission if two criteria are satisfied. First, the party to be charged must be aware of and understand the content of the statement allegedly adopted. *State v. Briggs*, 279 *N.J.Super.* 555, 562, 653 *A*.2d 1139 (App.Div.1995) (citing *Greenberg, supra*, 30 *N.J.* at 497, 153 *A*.2d 833). That is,

it is usually said that the proponent of the evidence must show, not merely that the party was *present* when the remark was made, (and 'presence' of course implies

'proximity within a distance sufficient to permit hearing') but also that the party actually *heard* and *understood* what was said.

[4 *Wigmore on Evidence* § 1072 (Chadbourn rev.1972).]

Second, it must be clear that the party to be charged with the adoptive admission "unambiguously assented" to the statement. *State v. Briggs,* 279 *N.J.Super.* 555, 563, 653 *A.*2d 1139 (App.Div.), *certif. denied,* 141 *N.J.* 99, 660 *A.*2d 1198 (1995). *See also State v. Thompson,* 59 *N.J.* 396, 410, 283 *A.*2d 513 (1971) (explaining that defendant's answers to specific questions are admissible as adoptive admissions when they "clearly bespeak" adoption by defendant of questioner's factual references to crime); 2 *McCormick on Evidence* § 261 (Strong ed.1992); 4 *Wigmore on Evidence* § 1072 (Chadbourn rev.1972).

In this case, neither the trial court nor the parties directly addressed the admissibility of the head nod as an adoptive admission. And, as we have noted, the Appellate Division regarded the head nod as "equivocal," and deemed it "highly questionable" that it satisfied the requirements of *N.J.R.E.* 803(b)(2). We conclude, however, that if warranted by the attendant circumstances, a nod of the head can qualify as an affirmative expression of agreement constituting an adoptive admission. *N.J.R.E.* 803(b)(2) expressly permits an adoptive admission to be established by either conduct or by words, or both, and our courts have recognized that in a particular context, nonverbal action may constitute an adoptive admission. Thus, for example, in *State v. Gorrell,* 297 *N.J.Super.* 142, 151–52, 687 *A.*2d 1016 (1996), the Appellate Division held that a defendant's smile in response to being called a "butcher" after an assault with a knife could be found to be "tantamount to an admission" and therefore admissible as an adoptive admission. Similarly, courts in other jurisdictions have admitted proof of the specific conduct here, a head nod, as an adoptive admission. *See, e.g., State v. Shoop,* 441 *N.W.*2d 475, 482 (Minn.1989); *State v. Brummer,* 209 Wis.2d 600, 568 *N.W.*2d 37 (Wis.App.1997).

In this case, proof of Good's nodding his head could constitute an adoptive admission if he heard and understood the alleged statement by Cockrell about the reason for plaintiff's termination and if the evidence demonstrates that the nodding was intended to convey agreement with that statement. As the proponent of the adoptive admission, plaintiff must establish both prerequisites for admissibility to the trial court's satisfaction. A hearing should have been conducted to evaluate that proffer in accordance with the requirement of *N.J.R.E.* 104(a) that "wherever ... the admissibility of evidence ... is subject to a condition, and the fulfillment of a condition is in issue, that issue is to be determined by the judge." *See also Greenberg, supra,* 30 *N.J.* at 498, 153 *A.*2d 833 (stating that proffered adoptive admission should be admitted only when "[the] trial court is satisfied preliminarily that all conditions for its application have been established by the proponent, or at least that a reasonable jury could so find"); *Gorrell, supra,* 297 *N.J.Super.* at 151, 687 *A.*2d 1016 (requiring admissibility of adoptive admission to "be determined in a Rule 104 hearing"); Biunno, comment 2 on *N.J.R.E.* 104 (2002) ("[t]he admissibility of adoptive admissions ... [should be] determined by the judge preliminarily pursuant to *N.J.R.E.* 104(a)"). Because the admissibility of Good's alleged head nod depends on whether plaintiff is able to satisfy the criteria detailed above, a hearing pursuant to *N.J.R.E.* 104(a) is required. If the trial court then decides that the evidence may be admitted, it would, of course, be for the factfinder to ascribe the weight to be given to that evidence.

Should the court determine that evidence of Good's head nod is admissible, there is yet a second gatekeeping function it must perform before allowing the case to proceed at trial. It must decide, based on the evidence adduced at the Rule 104 hearing, whether the adoptive admission, if made, satisfies the *Price Waterhouse* standard of direct evidence because plaintiff's ability to establish a *prima facie* case depends on a shift to defendant of the burden of proof. In this regard the court should take into account

plaintiff's assertions that the adoptive admission was made by the ultimate decisionmaker himself while executing the adverse employment action, that it bore directly on the motivation for the decision at issue, and that it directly communicated proscribed animus as the reason for plaintiff's termination. In that context, the court also must consider plaintiff's assertion that Good told him that he was "getting too old for this type of work." We are satisfied that if these assertions are credited by the court, the adoptive admission of Good's head nod would then qualify as direct evidence sufficient to shift the burden of persuasion.

## IV.

The judgment of the Appellate Division is reversed and the matter remanded to the trial court for a Rule 104 hearing consistent with this opinion.

*For reversing and remanding*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.