

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-17-2006

# Salkovitz v. Pioneer Elec USA Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3709

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Salkovitz v. Pioneer Elec USA Inc" (2006). *2006 Decisions*. Paper 739.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/739

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————

No. 05-3709

—————

MURRAY SALKOVITZ,
                                        Appellant

v.

PIONEER ELECTRONICS (USA) INC.

—————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil No. 04-cv-00344
District Judge:  The Honorable Garrett E. Brown, Jr., Chief Judge

—————

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2006

—————

Before: BARRY, VAN ANTWERPEN and SILER,[*] <u>Circuit Judges</u>

—————

(Opinion Filed: July 17, 2006)

—————

OPINION

—————

———————————

   [*] The Honorable Eugene E. Siler, Senior Circuit Judge, United States Court of Appeals
for the Sixth Circuit, sitting by designation.

BARRY, <u>Circuit Judge</u>

Murray Salkovitz sued his former employer, Pioneer Electronics (USA) Inc. ("Pioneer"), alleging that his termination constituted age discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. §§ 10:5-1 to -42. The District Court granted summary judgment to Pioneer, holding that Salkovitz had not produced evidence from which a rational factfinder could conclude that Pioneer's decision to terminate him was motivated by bias. We fully agree with the District Court's well-reasoned analysis and will affirm.

## I.

In 1990, Salkovitz began working as Regional Sales Manager for the Home Entertainment Company ("HEC"), a business division of Pioneer. In 1999, when he was fifty-four, he was promoted to be one of five Regional Directors (a position subsequently renamed to "Zone Director") within HEC. He was responsible for managing all of HEC's sales in Zone Five, the Midatlantic. He initially reported to Peter Brown; in December 2001, Frank Kendzora was named Vice President of Field Sales and Salkovitz began reporting to him. In July 2001, Tsutomu Haga was named President of HEC.

During 2002, Kendzora and Haga formulated a reorganization plan to lower costs and increase sales. The two East Coast Zones—Zones Four and Five—were considered to be performing below expectations. The plan, as ultimately approved by Pioneer upper management, combined Zones Four and Five into one zone, run out of the former Zone Five offices in New Jersey. Peter Arnold, a thirty-five-year-old Key Account Manager (a

2

position beneath Zone Director but with comparable types of responsibilities), moved from Colorado to New Jersey to become the new Zone Director. Salkovitz, however, was terminated on March 31, 2003. Pioneer allowed him to remain as a consultant until October 1, 2003. He received full salary and benefits and was expected to come to work Mondays and Thursdays to assist Arnold with any transition issues, but was otherwise allowed to use his time for personal matters.

In the two fiscal years preceding the reorganization, Salkovitz had been the worst-performing of the five Zone Directors. Pioneer's annual evaluations grade employees on a five-point scale: Unacceptable, Meets Some Expectations, Meets Expectations, Exceeds Some Expectations, and Exceeds Expectations. Salkovitz received a Meets Some Expectations in 2001 and a Meets Expectations in 2002. In Salkovitz's 2001 evaluation, Brown wrote, "Murray's performance in [a] critical area is sub-standard. . . . Murray demonstrates a poor comprehension of the directions for distribution management, negotiation practices, and program development. . . . [His] reports lack depth and do not indicate any analytical thinking. . . . Murray's general practices are to constrain his people when they get astray instead of educating them and encouraging their initiative. . . . Murray has sometimes made errors in judgment that could have been avoided if he had relied on his past experience. . . . [He] hampers group productivity. . . . His decisions are often flawed and his problem solving skills are severely lacking." His 2002 evaluation was less committal, in large part because Kendzora had not been in the position long enough to evaluate all of Salkovitz's performance in detail. Kendzora wrote, "Murray's

3

weekly reports are on time but sometimes lack content. . . . [H]e has demonstrated a basic understanding of the position of Zone Director [but] does need to strengthen his product and technical knowledge."

Arnold, on the other hand, achieved an Exceeds Some Expectations in 2001 and an Exceeds Expectations in 2002. His 2001 evaluation said, "He has done an excellent job covering his territory . . . . Peter has outstanding prospecting and qualifying skills and shows the persistence and tenacity needed to get results. . . . Customers know what to expect from Peter and can count on him to meet his commitments and deliver on his promises. . . . He asks insightful questions to uncover all customer needs . . . . Peter actively promotes a productive working environment within the sales team. . . . Peter provides invaluable feedback to his manager on a regular basis with his keen insights and valuable suggestions." In 2002, his manager wrote, "Peter has proven to be an extremely valuable asset to Pioneer . . . an exemplary employee [who] raises my level of expectation when I think of an effective sales manager."

Salkovitz was unconvinced that Arnold's promotion was driven by merit. Instead, he saw age discrimination at work. In December 2002, Salkovitz had forwarded to Haga an email with a picture of Pioneer employees standing in front of a sign reading "Haga's Used Cars." Salkovitz's email read, "Mr. Haga, Thought you may want to see what kind of impression you are making after a short time as our leader. Enjoy!!!!!!" Haga's reply read:

Thanks for sending a nice picture, however, I prefer "HAD" = Haga's

Antique Division  You can be a founding member, which means you are enough age, and enough to be called "Human Antique."  Hope you have [] good sales in December, too.

Haga, who is approximately Salkovitz's age, intended the email as a joke, and Salkovitz was not offended by it at the time.  Haga and Kendzora remarked on several occasions that they expected that Salkovitz would retire after he left Pioneer.  A slide show describing the reorganization placed the word "retire" next to his name.  Finally, Salkovitz was asked to help familiarize Arnold with the position of Zone Director; Arnold's first evaluation in his new role was a "Meets Expectations."

On December 8, 2003, Salkovitz sued Pioneer in the Superior Court of New Jersey, Law Division.  His complaint alleged a single cause of action: that his termination had been on account of his age, in violation of NJLAD.  On January 27, 2004, Pioneer removed the case to the United States District Court for the District of New Jersey by invoking 28 U.S.C. §§ 1441(a) and 1446.  Exactly one year later, on January 27, 2005, Pioneer filed a motion for summary judgment.  The District Court granted Pioneer's motion in a memorandum opinion filed on July 12, 2005.  This timely appeal followed.

**II.**

The District Court had jurisdiction under 28 U.S.C. § 1332.  We have appellate jurisdiction under 28 U.S.C. § 1291.  We review a District Court's grant of summary judgment *de novo*.  Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue

5

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). We must draw all reasonable inferences from the underlying facts in the light most favorable to the non-moving party. See Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002). "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." Fakete, 308 F.3d at 337.

### III.

In deciding cases under the NJLAD, New Jersey courts generally look to federal law interpreting Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act. Bergen Commercial Bank v. Sisler, 723 A.2d 944, 949-50, 157 N.J. 188 (1999). An employee can defeat a motion for summary judgment by presenting either sufficient direct evidence or sufficient indirect evidence of discrimination. Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004). We discuss these possibilities in turn.

Direct evidence of discrimination is assessed using a two-step burden-shifting test drawn from Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see Bergen Commercial Bank, 723 A.2d at 954. First, the plaintiff must present evidence "which if believed, proves . . . without inference or presumption . . . that decisionmakers placed substantial negative reliance on an illegitimate criterion . . . in deciding to terminate his or her employment." Bergen Commercial Bank, 723 A.2d at 954 (internal quotation marks and citations omitted.) That is, Salkovitz must show "a direct causal connection" between his

6

termination and an alleged animus towards older employees.  Id.  If the employee satisfies this "rigorous" standard, the burden shifts to the employer to show that it would have made the "same decision even in the absence of the impermissible consideration."  Id.

Salkovitz did not present such evidence.  At most, the statements allegedly made by Kendzora and Haga would show that they were aware of Salkovitz's age and that they expected him to retire after the end of his six-month consultancy.  Unlike the plaintiff in Fakete, who was told by his superior that the company was "looking for younger single people," id. at 336, Salkovitz has not presented evidence that Pioneer's employment decisions were at all connected to any beliefs about his age.  Salkovitz also cites McDevitt v. Bill Good Builders, Inc., 816 A.2d 164, 175 N.J. 519 (2003), to argue that he presented "proofs of sufficient quality . . . provided through circumstantial evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting that alleged discriminatory attitude."  Id. at 169 (internal quotation marks omitted).  There, however, the alleged statement was a nod indicating agreement with an explanation that the plaintiff had been fired because he was "too old for the job."  Id. at 167.  What was "circumstantial" was only the proof that the statement had been made—the statement itself, if made, directly showed the necessary discrimination "without inference or presumption."  Here, however, even though we must take as true Salkovitz's claims about Haga's and Kendzora's statements, we would need to make further inferential leaps to find discriminatory motives.

Indirect evidence of discrimination is assessed using the three-step test articulated

7

by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>see</u>

<u>Monaco</u>, 359 F.3d at 300.  First, the plaintiff must present sufficient evidence to make out

a prima facie case of discrimination.  <u>Id.</u>  It is undisputed for purposes of this appeal that

Salkovitz did so; he was passed over as a potential Zone Director for the newly combined

zone in favor of a substantially younger employee, as a result of which his employment

was terminated.  If the plaintiff presents such evidence, the burden shifts to the employer

to set forth a legitimate nondiscriminatory reason for its actions.  <u>See</u> <u>Saint Mary's Honor</u>

<u>Center v. Hicks</u>, 509 U.S. 502, 507 (1993) (holding that such reasons must be sufficient to

"support a finding that unlawful discrimination was not the cause of the employment

action").  It is also undisputed on appeal that Pioneer presented sufficient evidence to

meet its  burden at the second step.  The reorganization of the HEC zones was intended to

cut costs, and Arnold's previous successes could quite legitimately justify Pioneer's

selection of him as the new Zone Director.

At the third step, the burden shifts back to the plaintiff to produce evidence

demonstrating that the employer's proffered reason is pretextual.  <u>See</u> <u>Fuentes v. Perskie</u>,

32 F.3d 759, 764 ("[T]he plaintiff must point to some evidence, direct or circumstantial,

from which a factfinder could reasonably either (1) disbelieve the employer's articulated

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely

than not a motivating or determinative cause of the employer's action.")  Here again,

Salkovitz has not met his burden.  Pioneer has made out a compelling case that Arnold

was better-qualified for the new position than Salkovitz, and Salkovitz points to no facts

that would cast any significant doubt on that conclusion. Arnold had not previously been a Zone Director, it is true, but every promotion gives the promoted employee new duties. Similarly, Salkovitz's six-month consultancy and assistance to Arnold do not suggest that Arnold was less qualified, only that Arnold, new to the job and the area, could benefit from being shown the ropes by a more experienced employee.

Salkovitz also argues that the handful of documented remarks about his age and retirement plans are circumstantial evidence that Pioneer's stated reasons for his termination were a pretext for age discrimination. This argument is unconvincing in light of the strong evidence that he was less qualified than Arnold. Moreover, even taken together, these remarks do not suggest hidden motivations. In the context of the email Salkovitz had sent to Haga, the "human antique" comment was clearly a joke. Any expectation Haga and Kendzora had that he would retire—an expectation admittedly encouraged by his discussions with his colleagues of the house he was building in Florida—has not been connected to his termination or to any discriminatory motive. Their comments to him about his retirement plans reflect nothing more than a concern for him after leaving Pioneer. No rational jury could conclude from these facts that Pioneer's stated reasons for terminating his employment were a pretext for age discrimination.

For the reasons stated above, we will affirm the judgment of the District Court.