# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.   A-0039-24
                    A-0598-24

B.A.,[1]

      Plaintiff-Appellant,

v.

J.W.,

      Defendant-Respondent.

_____

      Submitted January 13, 2026 – Decided February 4, 2026

      Before Judges Firko and Vinci.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0179-20.

      B.A., self-represented appellant.

      SeidenFreed LLC, attorneys for respondent (Wendy M. Rosen, of counsel and on the briefs; Neethi Vasudevan, on the briefs.)

_____

[1] We identify the parties and children by initials and pseudonyms to protect the confidentiality of court records relating to the children.  R. 1:38-3(d).

PER CURIAM

In these back-to-back appeals, which we have consolidated for the purpose of writing one opinion, plaintiff B.A., who is self-represented, appeals from post-judgment matrimonial orders entered by the Family Part judge. In A-0039-24, plaintiff appeals from an October 4, 2023 order imposing supervised parenting time, Soberlink[2] monitoring, and psychotherapy, and an August 2, 2024 order denying his motion for reconsideration of those restrictions.

In A-0598-24, plaintiff appeals from an August 5, 2024 order granting defendant J.W.'s motion to relieve her from having to pay him 50% of their Merrill Edge SEP-IRA (SEP-IRA) funds because the monies were used to pay for both parties' 50% share of their daughter A.A (Ann's) extraordinary and unforeseen boarding school tuition and fees as provided under the parties' marital settlement agreement (MSA). Plaintiff challenges the order requiring him to equally share Ann's extraordinary and unforeseen boarding school tuition and fees, as well as the taxes and penalties for early withdrawal of the SEP-IRA. Plaintiff also appeals from the denial of his request for discovery and a plenary hearing. We affirm all of the orders under review.

---

[2] Soberlink is a remote alcohol monitoring system. Soberlink, https://www.soberlink.com (last visited Jan. 28, 2026).

A-0039-24

## I.

## Factual Background

We derive the following facts and procedural history from the motion record. The parties divorced on February 3, 2022. The MSA was incorporated into their final judgment of divorce. They have four children: F.A. (Fran), age twenty, Ann, age eighteen, B.A. (Brad), age seventeen, and R.A. (Robert), age fourteen. The record reveals a history of plaintiff emotionally and physically abusing his children. For example, plaintiff abused Fran by pulling her hair and throwing objects at her. Consequently, Fran had physical manifestations of distress, including stuttering, handwringing, and nervous hair twirling. In August 2017, Fran attempted suicide. She ceased all contact with plaintiff and enrolled in a therapeutic boarding school in North Carolina.

Plaintiff also abused the parties' other daughter Ann, causing her to suffer with anxiety and depression. Ann underwent therapy and also required enrollment in a therapeutic boarding school to address the trauma stemming from plaintiff's abuse.

On September 24, 2019, defendant filed an order to show cause (OTSC) seeking relief from plaintiff's threats of harm to defendant and the children, as well as plaintiff's anger issues and alcohol abuse. Ultimately, the parties entered

3                                                                    A-0039-24

a consent order, which provided that Dr. David Gomberg would prepare a custody/best interest evaluation of the parties' four children, who were all minors at the time.

On March 12, 2020, defendant filed a second OTSC against plaintiff alleging a resurfacing of his alcohol issues and abusive behavior. On April 17, 2020, the parties entered a second consent order, which addressed parenting issues, prohibited plaintiff from drinking alcohol two hours prior to and during his parenting time, and required him to use Soberlink monitoring to prove his sobriety fifteen minutes prior to his parenting time and four times per day when he exercised parenting time.

On May 24, 2021, Dr. Gomberg issued his evaluation. Dr. Gomberg opined plaintiff was a "risk factor" with respect to both the safety of the children and his fitness as a parent. Dr. Gomberg also opined that plaintiff's alcohol usage "contributed to the problems in the marriage and with the children" and caused "significant damage" to the family. Dr. Gomberg made the following recommendations, which the parties incorporated into paragraph 5.1 of the MSA:

> A. [Plaintiff] shall remain completely sober during his parenting time with the children. If [plaintiff] ingests alcohol during parenting time, [plaintiff] shall be required to immediately resume Soberlink monitoring

4

in perpetuity and if he fails to do so, his parenting time shall be suspended.

. . .

D. If [plaintiff] engages in any further incidents of abuse of the parties' children, parenting time shall be adjusted significantly, and parenting time will become supervised.

On November 9, 2022, Brad filed a complaint with the Solebury Township Police Department (STPD) alleging that plaintiff abused him and caused him bodily injury. Resultingly, defendant filed an emergent OTSC seeking sole residential custody and to restrain plaintiff's parenting time based on his alleged increasing physical and emotional abuse and threats of harm. Defendant requested plaintiff use Soberlink monitoring to ensure his sobriety and also that plaintiff have minimal supervised parenting time when he resumes. According to defendant, plaintiff failed to maintain sobriety as required by the MSA. Defendant argued plaintiff's relapse caused increasing physical and verbal abuse of Brad, resulting in bruising and extreme dieting. Defendant also sought counsel fees.

5

Pursuant to Brad's complaint, the Bucks County Children and Youth Services (BCCYS)[3] conducted an investigation and determined the police report was "unfounded." As a result of BCCYS's finding, on January 26, 2023, plaintiff filed a cross-motion in response to defendant's OTSC claiming the allegations had not been proven.

On May 12, 2023, the judge heard oral argument on defendant's OTSC and a motion filed by plaintiff to quash a subpoena defendant served on the police department to obtain the report Brad filed. On June 21, 2023, the judge denied plaintiff's motion to quash the subpoena and granted defendant's request for counsel fees.

<u>A-0039-24 Rulings</u>

On October 4, 2023, the judge denied defendant's application for sole residential custody, directed plaintiff to resume Soberlink monitoring during his parenting time, ordered him to provide proof of sobriety by complying with Soberlink monitoring, and allowed him to communicate with the children if he complied with the Soberlink monitoring and proved sobriety. The judge made other rulings not challenged on appeal.

---

[3] BCCYS is a social services agency located in Bucks County, Pennsylvania. The parties moved to Pennsylvania after the divorce.

On October 23, 2023, plaintiff filed a motion for reconsideration. Plaintiff argued the judge incorrectly found that he had admitted to consuming alcohol during parenting time. Defendant filed a cross-motion requesting plaintiff's motion for reconsideration be denied and for counsel fees. On April 19, 2024, the judge heard oral argument and reserved decision.

On August 2, 2024, the judge entered an order accompanied by a Rule 1:6-2(f) statement of reasons. The judge denied plaintiff's motion for reconsideration finding that although he did not admit to consuming alcohol in front of the children, there was other "sufficient evidence to not reconsider the ultimate rulings" in the October 4, 2023 order. Specifically, the judge reviewed the November 15, 2022, and May 12, 2023 hearing transcripts and found the "totality of the circumstances," and Dr. Gomberg's evaluation, warranted denial of reconsideration. The judge rejected plaintiff's argument that the BCCYS's finding of "unfounded" supported reconsideration.

A-0598-24 Rulings

The Children's Uniform Transfers to

Minors Act (UTMA) Accounts

While still married, the parties created UTMA accounts for the four children. The MSA amended a previous consent order and provided the parties

7

no longer had to reimburse funds taken from the UTMA accounts spent on repairs and construction costs. The MSA required plaintiff to pay defendant the greater of 50% of his share of proceeds from the sale of a lot adjacent to the marital home or $400,000. As consideration for this payment, defendant agreed to assume full responsibility for the "regular expenses" of the four children.

The MSA also stated defendant would be responsible for all "unreimbursed medical, dental, orthodontic . . . psychological, . . . and other health care expenses" for the children, while "extraordinary, unforeseen and/or catastrophic expenses" for the children would be equally divided.

Later, the parties entered an additional consent order authorizing the use of UTMA account funds to pay expenses for the marital home. Specifically, the UTMA funds covered approximately $11,700 per month to pay the mortgage, property taxes, and homeowner's insurance. The consent order also permitted UTMA funds to pay for repairs to the home and costs necessary to facilitate its sale. However, the consent order required the parties to use the net sale proceeds of the home to reimburse all UTMA funds expended on the marital home.

In particular, plaintiff was required to reimburse 75% of the funds expended on the marital home, while defendant was required to reimburse the remaining 25%. In total, the parties were required to reimburse $257,400 or

8

$64,349.50 per child in UTMA funds spent on the marital home. Proportionally, plaintiff was required to reimburse $193,050 or $48,262.50, and plaintiff was required to reimburse $64,350 or approximately $16,087 per child. Defendant provided plaintiff with UTMA account statements for the period of May 2018 through June 2021.

### Ann's Unforeseen and Extraordinary Costs

Defendant asserted that as a result of plaintiff's abusive conduct towards Ann, she suffered anxiety and depression, which required Ann to undergo therapy. Similar to her sister Fran, Ann enrolled in a therapeutic boarding school to address the trauma caused by plaintiff's abuse. Therefore, in May 2021, Ann enrolled in therapeutic programs at Trails Carolina.

After spending the Summer of 2021 at Trails Carolina, Ann transitioned to a program at Asheville Academy in the Fall of 2021. Defendant utilized Ann's UTMA account to fund the tuition. After Ann's UTMA account made full tuition payment to Trails Carolina, which cost $65,530, and a partial tuition payment to Asheville Academy, her account balance was $122,802.53. Ann's UTMA account was used to make the remaining payment to Asheville Academy from the Fall of 2021 to the Fall of 2022, which cost $114,913.22. This payment reduced Ann's account to $7,889.31.

9

The day after the parties divorced, plaintiff's counsel provided defendant's counsel four checks totaling $64,350, representing reimbursement for each child's UTMA accounts from both parties' share of the net sale proceeds of the home. The check increased Ann's UTMA account total to $72,239.91. On July 29, 2022, defendant sent plaintiff an email that contained a Google Drive link with the children's updated UTMA account statements.

Unfortunately, Ann continued to struggle with mental health issues while attending Carolina Trails and Asheville Academy. While the parties originally expected Ann to return to public school after the therapeutic program like Fran did, Ann required additional clinical support. Specifically, Ann's therapist "recommended that [she] attend a traditional, non-therapeutic boarding school with a form of clinical support on or off campus (preferably on campus clinical support)."

Based on the therapist's recommendation, in May 2022, defendant hired Stratas Consulting Group (Stratas) to identify an appropriate boarding school for Ann after she graduated from Asheville Academy. Defendant paid Stratas $5,000 from Ann's UTMA account, bringing her UTMA account total to $67,239.31. Stratas recommended two options: (1) the Solebury School

A-0039-24

(Solebury); or (2) the Darrow School (Darrow).  The parties chose to enroll Ann in Solebury because it is located closer to their residences.

However, Solebury did not meet Ann's needs, and she continued to struggle.  Therefore, in January 2023, defendant transferred Ann to Darrow in the middle of her sophomore year of high school.  Despite transferring after only a few months, Ann's UTMA account paid the entirety of Solebury's tuition, $53,907.20, because tuition was paid in advance.  After paying for the Solebury tuition, Ann's UTMA account was reduced to $13,332.11.  Ann improved at Darrow as she ceased having psychosomatic issues and only required one medication instead of the four medications she previously required.  Currently, Ann is still attending Darrow, where she is a senior in high school.

The remainder of Ann's UTMA account was used to fund a portion of the tuition before the account ran out of funds.  Since then, defendant has paid $149,396.53 out-of-pocket for Ann's tuition at Darrow.  Defendant planned on using the parties' 2017 California income tax refund to recover this cost, however, on October 24, 2023, the judge ordered the refund check to be equally divided between the parties.  Instead, defendant liquidated the SEP-IRA, to finance Ann's attendance of Darrow.  Defendant maintains this was reasonable because the MSA provides for the parties to pay equally for the children's

11

extraordinary costs. As Ann's attendance at Darrow was extraordinary and unforeseen and plaintiff refused to contribute, defendant decided it was reasonable to liquidate the SEP-IRA and use the funds from liquidation.

In 2023, the gross distribution of the SEP-IRA after liquidation was $159,853.45. Defendant used $149,396.53 of the liquidation to pay the remainder of the Darrow tuition that was not covered by Ann's UTMA account. Defendant reserved the remaining funds to cover income taxes and early withdrawal penalties associated with its liquidation.

On March 6, 2024, defendant filed a notice of motion to either excuse her from liquidating the SEP-IRA or requiring plaintiff to contribute 50% of Ann's tuition and fees at Darrow as extraordinary and unforeseen. In the alternative, defendant requested that if she is required to pay plaintiff 50% of the SEP-IRA, then he should reimburse her for 50% of Ann's tuition and costs for the 2023-2024 and 2024-2025 school years after depletion of her UTMA account as per the terms of the MSA. Defendant also requested to retain the balance remaining from the SEP-IRA account to pay the taxes and penalties for early withdrawal. She also requested the judge enforce the June 21, 2023 order and require plaintiff to pay the $3,119 counsel fee award granted relative to his motion to quash the subpoena. Defendant also sought counsel fees for the instant motion.

12

Plaintiff filed a certification in opposition to defendant's motion. He did not file a cross-motion seeking affirmative relief. The parties agreed to mediate the dispute but were unsuccessful. On August 2, 2024, the judge conducted oral argument on defendant's motion and reserved decision.

On August 5, 2024, the judge issued a comprehensive order pursuant to Rule 1:6-2(f). The judge granted defendant's motion and excused her from having to pay plaintiff 50% of the funds from the liquidation of the SEP-IRA. The judge found Ann transferred to Darrow after the parties entered the MSA, and Ann's boarding school tuition and fees "constitute an extraordinary expense that is directly related to her ongoing mental health treatment," which "needed to be incurred due to the therapist's recommendation."

The judge observed Ann's "mental health issues are well-documented and significant." The judge emphasized the therapist recommended to "both parties" that Ann enroll in a boarding school. The judge highlighted Ann's mental health issues have "significantly improved" since she began attending Darrow. Accordingly, pursuant to paragraph 8.1(B) of the MSA, the judge ordered plaintiff to reimburse defendant for half of the tuition and costs incurred for Ann's boarding schools.

13

The judge noted plaintiff did not file a notice of cross-motion seeking affirmative relief. The judge found an offset against the SEP-IRA would have been a "logical and equitable resolution of the issue" and rejected plaintiff's objection to improper use of the UTMA funds. Based on plaintiff's actions and "inaction," the judge granted defendant's request for counsel fees. A memorializing order was entered. This appeal followed.

Before us, under A-0039-24, plaintiff argues the judge erred by: (1) relying on a factually baseless assertion to impose unjust restrictions on him; (2) imposing restrictions without any credible evidence of abuse or alcohol use; (3) upholding restrictions through improper post hoc rationalizations rather than correcting her acknowledged error; and (4) by denying him the opportunity to challenge key evidence, undermining the legitimacy of the orders.

Under A-0598-24, plaintiff argues the judge erred by: (1) denying a plenary hearing despite material factual disputes; (2) improperly relying on an unsigned, unauthenticated document and making factual determinations without sufficient evidence, including medical, psychological, educational, and financial records or testimony thereby overstepping her authority and violating due process; (3) failing to enforce defendant's fiduciary duty under N.J.S.A. 46:38A-

14

30; and (4) modifying the financial terms of the MSA. None of plaintiff's arguments have merit.

## II.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Id. at 283 (quoting Cesare, 154 N.J. at 411-12). Deference does not extend to legal issues, which are subject to de novo review. Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

We review a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). "The Rule applies when the court's decision represents a clear abuse of discretion based on plainly incorrect reasoning or failure to consider evidence or a good reason for the court to reconsider new information." Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 4:49-2 (2026). Likewise, when reviewing a challenge to a

A-0039-24

modification decision, the appellate court ordinarily employs the abuse of discretion standard.  J.B. v. W.B., 215 N.J. 305, 325 (2013).

"[W]e do not overturn those determinations unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence."  Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004).  Furthermore, we review an order entered under Rule 1:10-3 under an abuse of discretion standard.  N. Jersey Media Grp. v. State, Off. of Governor, 451 N.J. Super. 282, 296 (App. Div. 2017).

We may consider allegations of errors or omissions not brought to the trial judge's attention only if it meets the plain error standard under Rule 2:10-2.  Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973); see Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2026).  We frequently decline to consider issues that were not raised below or not properly presented on appeal when the opportunity for presentation was available.  Ibid.  Generally, unless an issue goes to the jurisdiction of the trial court or concerns matters of substantial public interest, the appellate court will ordinarily not consider it.  J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021); see State v. Cabbell, 207 N.J. 311, 327 n.10 (2011) (declining to consider an argument first raised in a supplemental brief to the Supreme Court).

A-0039-24

If this court considers an issue not properly raised at trial or preserved for appeal, we apply the plain error standard of Rule 2:10-2, which asks whether the error was "clearly capable of producing an unjust result." State v. Singh, 245 N.J. 1, 13 (2021). Under the plain error standard, "[t]he mere possibility of an unjust result is not enough." State v. Funderburg, 225 N.J. 66, 79 (2016). "Relief under the plain error rule, Rule 2:10-2, at least in civil cases, is discretionary and 'should be sparingly employed.'" Baker v. Nat'l State Bank, 161 N.J. 220, 226 (1999) (quoting Ford v. Reichert, 23 N.J. 429, 435 (1957)).

## III.

Under A-0039-24, we first address plaintiff's arguments that the judge erred in denying his motion for reconsideration. Plaintiff maintains the judge relied "entirely" on a "mistaken assertion" and had no credible evidence that he consumed alcohol in the children's presence. Plaintiff points out the judge acknowledged in her October 4, 2023 order that she relied, in part, on "an unfounded assertion that [he] admitted to consuming alcohol in front of his children." Plaintiff's argument is misguided.

In her October 4, 2023 order, the judge relied in part on plaintiff's admission to drinking alcohol during parenting time in front of the children. In deciding plaintiff's motion for reconsideration, the judge acknowledged her

error that she improperly determined plaintiff made this admission, when he had not.  Regardless, the judge denied plaintiff's motion for reconsideration based on other substantial credible evidence in the record, including Dr. Gomberg's report.

Here, we are satisfied the judge did not abuse her discretion in denying plaintiff's motion for reconsideration, despite mistakenly asserting in her October 4, 2023 order that defendant admitted to drinking alcohol while parenting the children because of the other substantial credible evidence the judge properly relied upon.  Moreover, the judge held in her August 2, 2024 order that "there is still [a] sufficient factual basis to support its findings and the October 4, 2023 [o]rder as a whole."

Importantly, the judge relied heavily on Dr. Gomberg's evaluation in reaching her decision.  Specifically, the judge referred to Dr. Gomberg's report, which "highlight[ed] that [p]laintiff has significant drinking issues" and he has failed to acknowledge his past inappropriate behaviors.  The judge went on to state, "Dr. Gomberg emphasized that [p]laintiff's drinking problems were the source of many of the family issues; that [p]laintiff becomes violent, angry, and abusive when he is drunk; and that [p]laintiff refuses to take responsibility and

does not admit that he has a drinking problem." The record supports that determination.

Further, the judge also referred to plaintiff's testimony from the previous hearings and found his "testimony therein reflects inconsistencies that undermine his credibility and discount his defense of simply rejecting the totality of any allegation raised by defendant." The judge observed plaintiff's testimony "evasive," and he was "unclear in his responses" and had "reluctance" to answer questions regarding therapy. Therefore, we conclude the judge did not abuse her discretion in denying plaintiff's motion for reconsideration.

Plaintiff next argues the judge's order "disregarded the findings of [BCCYS], a state-mandated agency with statutory authority to investigate allegations of child abuse and neglect." Plaintiff refers to BCCYS's determination that the harassment allegation filed against plaintiff was "unfounded." Plaintiff argues the judge improperly relied on Dr. Gomberg's report and gave "weight to unproven accusations while ignoring the legally binding conclusion of an expert investigative body." Again, we are unpersuaded.

The judge gave due weight to Dr. Gomberg's report and other credible evidence, rather than BCCYS's finding, because BCCYS only assessed whether

the children were presently in immediate harm in that specific instance. Saliently, the judge found:

> while an unfounded statement by [BCCYS] may mean that the investigation itself at that moment in time means that the children are in a safe place because potentially they[ are] with the defendant . . . on that date, it does[ not] necessarily mean that there[ is] not an issue returning them to parenting time with [plaintiff].

The judge was correct in her analysis. We find it significant that the parties agreed to incorporate recommendations made by Dr. Gomberg into their MSA, which was largely based on his evaluation noting plaintiff's extensive history of abusive behavior and issues with alcohol.

Plaintiff also argues the judge improvidently relied on "post hoc rationalizations" and "retroactively introducing speculative justifications and vague reasoning." Plaintiff relies on mere speculation and does not reference any facts in the record to support his argument, which is unavailing. Plaintiff's motion for reconsideration was properly denied.

Finally, in A-0039-24, plaintiff contends the judge erred in denying him the opportunity "to challenge or rebut key evidence" she relied upon, particularly Dr. Gomberg's report. Plaintiff maintains the judge erred in admitting Dr.

Gomberg's report without requiring expert testimony because the report constitutes inadmissible hearsay pursuant to N.J.R.E. 801(c).

Plaintiff's hearsay argument fails for two reasons: (1) he did not properly raise the issue before the judge either in opposition to defendant's OTSC or in his motion for reconsideration; and (2) Dr. Gomberg's report falls under an exception to the hearsay rule, N.J.R.E. 803(b)(2), as an adoptive admission.

N.J.R.E. 803(b)(2) provides an exception to the hearsay rule, if "the statement is offered against a party-opponent and is a statement whose content the party-opponent has adopted by word or conduct or in whose truth the party-opponent has manifested belief." For a statement to fall within this exception, the court must find: "First, the party to be charged must be aware of and understand the content of the statement allegedly adopted;" and "[s]econd, it must be clear that the party to be charged with the adoptive admission 'unambiguously assented' to the statement." McDevitt v. Bill Good Builder, Inc., 175 N.J. 519, 529-30 (2003) (citing State v. Briggs, 279 N.J. Super. 555, 562-63 (App. Div. 1995)).

Here, the record shows plaintiff was aware of and understood Dr. Gomberg's report as he participated in the evaluation and had access to the report. Moreover, plaintiff was represented by counsel throughout the divorce

21

litigation, who ensured he understood the reports and its recommendations. Accordingly, the parties' agreement to incorporate Dr. Gomberg's recommendations into their MSA created no ambiguity as to plaintiff's assent to the report and its recommendations. <u>See</u> N.J.R.E. 803(b)(2). Therefore, N.J.R.E. 803(b)(2) governs, and the criteria have been met. We conclude the statements contained in Dr. Gomberg's report qualify as an adoptive admission under N.J.R.E. 803(b)(2) and could be used against plaintiff.

IV.

We now address the issues raised by plaintiff in A-0598-24. Plaintiff argues the judge erred in denying a plenary hearing despite the existence of material factual disputes regarding liquidation of the SEP-IRA, defendant's misuse of UTMA funds, and the necessity of boarding school. Plaintiff asserts the judge "summarily resolved" these disputes based solely on affidavits and certifications contrary to established New Jersey law, which "mandates" discovery and a plenary hearing when "financial inconsistencies exist." Plaintiff maintains discovery and a plenary hearing are required because the unsuccessful mediation establishes material factual disputes exist.

Defendant counters discovery and a plenary hearing are not required. Defendant argues that she provided plaintiff with comprehensive documentation

22

of Ann's expenses and an accounting for the SEP-IRA offset, leaving no material facts in dispute. According to defendant, the judge's decision to "simultaneously" enforce the terms of the MSA and offset plaintiff's financial responsibility for Ann's extraordinary and unforeseen expenses against his share of the SEP-IRA was fully supported by the record.

We review a trial court's decision not to hold a plenary hearing by an abuse of discretion standard. See Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). It is well established "a plenary hearing is only required if there is a genuine, material[,] and legitimate factual dispute." Segal v. Lynch, 211 N.J. 230, 264-65 (2012). The burden is on the movant to make a "prima facie showing that a plenary hearing is necessary." Hand v. Hand, 391 N.J. Super. 102, 106 (App. Div. 2007).

Plaintiff argues the judge should have ordered discovery and a plenary hearing. We disagree. Here, defendant merely sought to enforce paragraph 7.2(c) of the MSA pertaining to "sharing on a 50/50 basis, the cost of any extraordinary, unforeseen and/or catastrophic expense(s) for the children." The uncontroverted record reveals at the time the parties entered into their MSA, they acknowledged that Ann was enrolled in a therapeutic boarding school in Asheville, and her UTMA account was paying for Asheville's expenses. After

23

the parties executed the MSA, Ann's therapist recommended that she attend a "traditional, non-therapeutic boarding school with clinical support." This fact is not disputed.

Ann's eventual admission to Darrow as stated constituted an extraordinary and unforeseen expense that was not contemplated at the time the parties entered the MSA. Defendant submitted certifications in support of her motion accompanied by exhibits to explain how Ann's UTMA account funds were utilized to cover tuition and expenses at Asheville, Solebury, and Darrow, until the funds were depleted. Defendant supplied plaintiff with signed authorizations, which enabled him to access information relative to all of the children's UTMA accounts, including Ann's UTMA account at Wells Fargo. And, at plaintiff's request, defendant promptly sent him a second set of authorizations with raised seals.

The judge rightfully granted defendant's motion excusing her from having to provide plaintiff with 50% of the funds from her SEP-IRA as it was properly used to pay for both parties' share of Ann's extraordinary and unforeseen boarding school tuition and expenses. These expenses were substantial but related to Ann's particularized needs.

A-0039-24

We also reject plaintiff's argument that defendant improperly sought modification of the MSA. The issue was one of enforcement—not modification—as to whether plaintiff's 50% share of the SEP-IRA could be applied to his 50% share of Ann's tuition and expenses under paragraphs 7.2(c) and 8.1(B) of the MSA. Plaintiff never challenged the validity or enforceability of the MSA. The judge acted well within her discretion in enforcing the terms of the MSA and finding plaintiff is obligated to reimburse defendant for 50% of the costs incurred for Ann's tuition and expenses and ordering him to be responsible for 50% of any remaining taxes and penalties owed if not covered by the balance remaining.

We defer to the court's exercise of discretion to proceed without a plenary hearing. See Jacoby v. Jacoby, 427 N.J. Super. 109, 123 (App. Div. 2012). We discern no abuse of discretion here, and the judge properly exercised her discretion not to hold a plenary hearing or order discovery.

V.

Plaintiff argues for the first time before us that the judge's reliance on the recommendation provided by Ann's therapist constituted reversible error. On May 16, 2022, Ann's therapist prepared a letter stating, "[t]he following are clinical and therapeutic recommendations for post-graduation from Asheville

A-0039-24

Academy for [Ann]." The letter also recommended Ann remain in non-therapeutic boarding school after her expected graduation in the Fall of 2022. The judge relied on this letter in determining "[Ann's] boarding school tuition and costs [were] unusual, unforeseen, and extraordinary expenses, which needed to be incurred due to the recommendation of [Ann's] therapist that the child should be enrolled in boarding school at the location suggested to address her mental health needs."

Plaintiff argues this was an error because the therapist's recommendation was (1) unauthenticated in violation of N.J.R.E. 901; and (2) constituted hearsay under N.J.R.E. 802. Plaintiff contends the recommendation violates N.J.R.E. 901, which requires authentication for evidence to be admissible. N.J.R.E. 901 provides "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what the proponent claims it is." Plaintiff argues the recommendation violates N.J.R.E. 901 because the recommendation was "an unsigned, anonymous, and unverified document with no supporting medical records, sworn statements, or testimony confirming medical necessity." Plaintiff's argument lacks merit because the parties relied on the therapist's

26

recommendation previously when they chose to enroll Ann at Solebury following her graduation from Asheville Academy.

Plaintiff also argues the document constitutes inadmissible hearsay under N.J.R.E. 802, which provides "[h]earsay is not admissible except as provided by these rules or by other law." However, N.J.R.E. 803(c)(6) or the business records exception to the hearsay rule provides:

> A statement contained in writing or other record of acts, events, conditions, and, subject to Rule 808, opinions or diagnoses, made at or near the time of observation by a person with actual knowledge or from information supplied by such a person, if the writing or other record was made in the regular course of business and it was the regular practice of that business to make such writing or other record.

Courts have interpreted N.J.R.E. 803(c)(6) to apply when: (1) the writing was made in the regular course of business; (2) the writing was prepared at or near the time of observation; and (3) the writing was prepared by a person with personal knowledge or from information supplied by a person with personal knowledge. State v. Matulewicz, 101 N.J. 27, 29 (1985).

Here, we conclude N.J.R.E. 803(c)(6) applies because the therapist's recommendation was made in the regular course of business. Second, Asheville Academy is a therapeutic boarding school so Ann's therapist would be regularly observing Ann as part of the therapy program at the time of its writing. Third,

27

the letter was sent from the therapist who performed the observation and therefore had first-hand personal knowledge of the information from the observation. Therefore, the therapist's letter falls under the business records exception of N.J.R.E. 803(c)(6) and is not inadmissible hearsay.

Further, plaintiff did not raise the authentication or hearsay arguments in his opposition papers. Thus, plaintiff must prove the judge's purported error satisfied the plain error standard of Rule 2:10-2. See Nieder, 62 N.J. at 234. As the record evidences, plaintiff had personal knowledge of the therapist's letter and recommendation and N.J.R.E. 803(c)(6) applies. Thus, the judge did not commit plain error.

VI.

Next, plaintiff argues defendant failed to comply with her fiduciary duties under N.J.S.A. 46:38A-30 because she "demonstrated a pattern of incomplete and obfuscated financial disclosures" regarding the children's UTMA accounts. N.J.S.A. 46:38A-30 provides:

> A custodian shall keep records of all transactions with respect to custodial property, including information necessary for the preparation of the minor's tax returns, and shall make them available for inspection at reasonable intervals by a parent or legal representative of the minor or by the minor if the minor has attained the age of [fourteen] years.

28

Plaintiff's argument is belied by the record. Contrary to his assertion, the record shows in December 2021, defendant provided plaintiff with updated statements for the children's UTMA accounts for the period of May 2018 to June 30, 2021. On July 29, 2022, defendant again provided plaintiff statements of the children's UTMA accounts via an email that contained a Google Drive link. On June 12, 2024, and July 1, 2024, after the parties agreed to give plaintiff access to the UTMA accounts, defendant provided him with signed, notarized authorizations for the children's UTMA accounts. Our review of the record shows that defendant kept and provided records on several occasions to plaintiff. Therefore, we conclude she did not violate her fiduciary duty under N.J.S.A. 46:38A-50.

We reiterate, plaintiff did not present this argument before the Family Part judge. Instead, he raised this argument at oral argument, and the judge did not address the issue in its order. "[A] mere mention of an issue in oral argument does not require an appellate court to address it." Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2026) (citing Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012)). Plaintiff must prove the judge's error satisfied the plain error standard of Rule 2:10-2. See Nieder, 62 N.J. at 234. For completeness, we have addressed the issue. As the record evidences defendant

satisfied her fiduciary duty under N.J.S.A. 46:38A-30, we find no error let alone plain error.

In light of our decision, we need not address plaintiff's arguments regarding denial of his due process rights or reassigning the matter to a different judge because we hold no remand is necessary.

To the extent that we have not addressed any of plaintiff's remaining arguments, we find they are so lacking in merit as to not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0039-24